278 So.2d 339 (1973)
Mr. JONES, Appellant,
v.
Mr. SMITH, Etc., et al., Appellees.
No. 73-560.
District Court of Appeal of Florida, Fourth District.
May 15, 1973.
Rehearing Denied May 16, 1973.
*340 Chandler R. Muller and Melvin Pearlman, of Mairs, Wood, Muller & Boroughs, Winter Park, for appellant.
Donald R. Corbett and Gladstone L. Kohloss, Orlando, for appellees.
MAGER, Judge.
This is an appeal from an order denying a claim for injunctive relief seeking to restrain the "obtaining or aiding in the obtaining of an abortion". Although pseudonyms are used the parties are real persons.
The primary question presented is whether a potential putative father has the right to restrain the natural mother from terminating a pregnancy resulting from their cohabitation. The appellant, who acknowledges that he is the father of the unborn child, is twenty-seven years old, was formerly married and is the father of a six-year-old daughter by such previous marriage. The appellee-mother is nineteen years old and unmarried and had been dating the appellant for approximately six months during which time the parties were frequently intimate. The appellant in seeking injunctive relief has indicated his desire to marry the appellee and to assume all the obligations financial and otherwise for the care and support of the unborn child; that, notwithstanding such affirmations, the appellee-mother, who has expressed her desire not to marry the appellant, has sought to terminate the pregnancy.
Although the appellant alleged in his complaint below "that the mother's mental and physical health will not be endangered by bringing the child to term in allowing its natural birth" there is no allegation and proof that the proposed termination of pregnancy does not comply with Florida's newly enacted "Termination of Pregnancy" law (Chapter 72-196, Laws of Florida, numbered as Section 458.22, Florida Statutes, F.S.A.) It is interesting to note a suggestion by the appellant that his own health would be affected if the pregnancy is terminated; testimony from a psychiatrist examining appellant suggested "the possibility of him suffering depressing symptoms and depressive reactions in the future".[1]
The main thrust of the appellant's position is that as a potential putative father he has the "right" to participate in the decision to terminate the pregnancy.
Because of the time factors involved and in particular the fact that the mother is reaching the end of the first trimester of pregnancy this court has granted an emergency hearing and has expedited its review.
*341 The question presented to this court is a matter of first impression in this state and as best as our research can determine is a matter of first impression in the nation. While the lack of readily available precedent presents some difficulty we, nevertheless, feel that the expressions and observations made by the courts of this state and the Supreme Court of the United States persuasively point to a resolution of the question in favor of the mother. Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) and Doe v. Bolton, 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973).
The recent decisions of the United States Supreme Court in Roe v. Wade, supra, and Doe v. Bolton, supra, while dealing with the constitutionality of statutes, set forth what we perceive to be the essential and underlying factor in the determination of this appeal. That factor is the "right of privacy" of the mother. As was observed in Roe v. Wade, the Supreme Court of the United States speaking through Mr. Justice Blackmun, stated:
"This right of privacy, whether it be founded in the Fourteenth Amendment's concept of personal liberty and restrictions upon state action, as we feel it is, or, as the District Court determined, in the Ninth Amendment's reservation of rights to the people, is broad enough to encompass a woman's decision whether or not to terminate her pregnancy. The detriment that the State would impose upon the pregnant woman by denying this choice altogether is apparent. Specific and direct harm medically diagnosable even in early pregnancy may be involved. Maternity, or additional offspring, may force upon the woman a distressful life and future. Psychological harm may be imminent. Mental and physical health may be taxed by child care. There is also the distress, for all concerned, associated with the unwanted child, and there is the problem of bringing a child into a family already unable, psychologically and otherwise, to care for it. In other cases, as in this one, the additional difficulties and continuing stigma of unwed motherhood may be involved. All these are factors the woman and her responsible physician necessarily will consider in consultation." (Emphasis added.)
The opinion continues to point out that while the right of personal privacy includes the termination of pregnancy decision "that this right is not unqualified and must be considered against important state interests in regulation". The interest of the state in regulating the termination of pregnancies is predicated upon the preservation and protection of the health of the pregnant woman and in the protection of the potentiality of human life. Chapter 72-196 reflects Florida's interest in regulating terminations of pregnancy. We make these observations with regard to the interest of the state, fully recognizing that we are here dealing with the interest of a potential putative father, for the reason that any interest that a natural father may have, whether married or unmarried, would certainly be subservient to the health of the pregnant woman and the potentiality of human life.
But, irrespective of the motivation for the state's interest in the enactment of a termination of pregnancy statute the Supreme Court of the United States has very significantly held that "for the stage prior to approximately the end of the first trimester, the abortion decision and its affectuation must be left to the medical judgment of the pregnant woman's attending physician ...". The attending physician, in consultation with his patient, is free to determine, without regulation by the state, that in his medical judgment the patient's pregnancy should be terminated. The initial decision to terminate a pregnancy, then, is one that is purely personal to the mother and between her and the attending physician, and any unreasonable governmental interference must yield to the mother's right of privacy.
*342 An examination of the Florida abortion statute reveals that apart from the medical reasons for the termination of pregnancy, the only other factors that would qualify the individuality of the mother's decision to terminate would be the consent of the husband or parents, etc. In this regard Section 3 of Chapter 72-196 provides:
"Section 3. Written requests required

"One of the following shall be obtained by the physician prior to terminating a pregnancy:
(1) The written request of the pregnant woman and, if she is married, the written consent of her husband, unless the husband is voluntarily living apart from the wife, or
(2) If the pregnant woman is under eighteen (18) years of age and unmarried, in addition to her written request, the written consent of a parent, custodian, or legal guardian must be obtained, ..." (Emphasis added.)[2]
It is to be noted from the foregoing that a married woman need not obtain the written consent of her husband if "the husband is voluntarily living apart from the wife".
The situation in the case under consideration involves neither a married woman nor a "husband". Moreover, the "consent" of a potential putative father is not included within nor is it required by the terms of the termination of pregnancy law. Therefore, if we were to resolve this question solely on the basis of the applicability of the Florida statute, the appellant would simply have no basis to claim his consent was necessary.[3]
As indicated the underlying basis for recognizing a woman's right to terminate her pregnancy during the first trimester is the right of privacy; that right of privacy remains constant except as qualified by the interest of the state subsequent to the first trimester. (Roe v. Wade, supra.) The right of privacy is a right that is purely personal to the individual asserting such right. Cf. Santiesteban v. Goodyear Tire & Rubber Company, 5 Cir.1962, 306 F.2d 9. In Babbitz v. McCann, U.S.D.C.E.D. Wis. 1970, 310 F. Supp. 293, 299, the Court observed:
"As long ago as 1891, in Union Pacific Railway Co. v. Botsford, 141 U.S. 250, 251, 11 S.Ct. 1000, 1001, 35 L.Ed. 734 (1891), the court said:
`No right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law. As well said by Judge Cooley, "The right to one's person may be said to be a right of complete immunity to be let alone."'" (Emphasis added.)
See also specially concurring opinion of Mr. Justice Ervin in Walsingham v. State, Fla. 1971, 250 So.2d 857; and Young Women's Christian Ass'n of Princeton, N.J. v. Kugler, U.S.D.C.N.J. 1972, 342 F. Supp. 1048.
The appellant contends that whatever right of privacy that the mother might have enjoyed, such right was "waived" by virtue of her consent to and *343 participation in the sex act. This argument is somewhat tenuous. The right of privacy of the mother with respect to a termination of pregnancy as delineated by the decisions of the United States Supreme Court is a right separate and apart from any act of conception. The determination of whether to carry the child the full term is not "controlled" or "waived" by virtue of the act of conception no more so than the fact that were the child conceived in the State of Florida would give the State the right to interfere with the termination of pregnancy during the first trimester. Moreover, whatever purported "waiver" might have occurred as a result of the conception, the interest or "right" of the natural father must remain subservient to "the life or health of the female" (see F.S. Section 458.22(2)(a), F.S.A.).[4]
If, as the appellant alleges, the right of privacy has been "waived" could it not be asserted that in the case where "pregnancy resulted from rape or incest" (see Section 458.22(2)(c)) the mother of the unborn child would be precluded from terminating the pregnancy absent the participation in such decision by the potential putative father. We make reference to this illustration to in no way deprecate from the sincerity of appellant's claim or the seriousness of the proposition before this court but merely to illustrate more poignantly the proposition that the decision to terminate pregnancy predicated upon the right of privacy is not vitiated by participation in the sex act.
Appellant further contends, apart from the question of the "right to privacy" that the termination of a pregnancy illustrates and reflects the "unfitness of the mother" or "the abandonment" of the unborn child. All jurisdictions recognize that as between the natural mother and putative father, the mother of an illegitimate child had the legal right to its custody, care and control superior to the right of the putative father, unless the mother is proved to be an unfit person. In the interest of R.L.G., Fla.App. 1973, 274 So.2d 4. Appellant's contentions are equally tenuous and as a practical matter overlook the decisions of the United States Supreme Court and the statutory enactments authorizing the termination of pregnancies. The questions of fitness or abandonment would seem to be arguments akin to questions of morality which have been laid to rest by the pronouncements of the United States Supreme Court and the Florida legislature. Moreover, whatever questions of fitness or abandonment that would somehow survive the judicial and legislative pronouncements they must yield to the paramount considerations of the preservation and protection of maternal health. We cannot conclude that a mother's decision to terminate a pregnancy gives rise to questions of "unfitness" or "abandonment".
As a further basis upon which to support his "right" to participate in the decision to terminate the pregnancy, appellant suggests the existence of an implied contract between himself and the mother  such contract being evidenced by appellant's agreement to support the unborn child if appellee were to become pregnant coupled with appellee's conduct in engaging in intimate relationships without contraceptive devices and appellee's representations that she would marry appellant.[5] This contention is patently without merit. Under the provisions of Chapter 72, Laws of Florida, appellant having acknowledged paternity he would by law be required to furnish such support. Even an absence of *344 statute the putative father could be required to provide for, maintain or support his illegitimate child. See annotation 20 A.L.R.3d 500. Any "consideration" for such a contract is simply nonexistent. Whether the appellant was required by law to provide support or whether as a moral obligation he undertook to do so does not serve as a basis upon which to establish a "contractual agreement" of such legal and enforceable significance as to prevent a termination of pregnancy otherwise permissible.
This court is familiar with and has examined the various treatises and cases dealing with the expanding rights of unwed fathers; we are, however, unable to conclude that such expansion is sufficiently broad so as to embrace any right to prevent termination of pregnancy.
If we were to conclude that a putative father has the standing to prevent the natural mother from terminating the pregnancy would the putative father have the corresponding standing to compel the termination of the pregnancy notwithstanding the mother-physician relationship or the considerations imposed by the state? Could a potential putative father (or for that matter a husband) seek an injunction to restrain the woman from using contraceptives or compel the woman to bear children? Such circumstances would seem ludicrous. It is unquestioned that a woman has a fundamental right to determine whether or not to bear a child, see Young Women's Christian Ass'n of Princeton, N.J. v. Kugler, supra, and it would be beyond the province of logic and reason to suggest that she could be compelled to procreate.
We conclude, therefore, that based upon the rationale of the decisions in Roe v. Wade, supra, and Doe v. Bolton, supra, and F.S. 458.22, F.S.A. that the decision to terminate a pregnancy is a personal decision to be made by the mother and her attending physician.[6]
Concluding as we do we would be careful to point out that this decision should not be interpreted as passing upon any aspect of the propriety vel non of the termination of pregnancies nor should this opinion be construed as authorizing the termination of pregnancy on demand without regard to the applicable criteria. Our decision is based upon our interpretation of the decisions of the Supreme Court of the United States and Florida Statute 458.22, F.S.A., as they relate to the right of a potential putative father to enjoin the natural mother from terminating her pregnancy. No such "right" exists.
The judgment below is affirmed.
WALDEN and CROSS, JJ., concur.
NOTES
[1] The psychiatric testimony, however, further suggested that the effect upon the appellant would not prevent him from future marriage or having children.
[2] Subsection (2) is not applicable since appellee is over the age of eighteen. It is doubtful whether any of the provisions of Chapter 72-196 are applicable in light of the fact that the appellee is not a married woman and more particularly in light of the decision in Roe v. Wade, supra.
[3] Although legislative enactments are presumed to be valid and the requirement for the consent of a "husband" is constitutional whatever may be contended with respect to the invalidity of a distinction between "husband" or putative father, such contention would simply be immaterial. This is so because the U.S. Supreme Court in Roe v. Wade, supra, has decided that during the first trimester the decision to terminate "must be left to the medical judgment of the pregnant woman's attending physician".
[4] Except for the bare allegation that the "mother's mental or physical health will not be endangered" appellant has failed to carry the burden of demonstrating the continuation of pregnancy would not "substantially impair the life or health of the female" as hereinabove set forth.
[5] The evidence shows that the appellant did not use contraceptive devices with those women with whom he had an intimate relationship prior to the circumstance herein.
[6] For this court to restrain the natural mother from terminating her pregnancy during the first trimester would be tantamount to the type of state interference or infringement proscribed by Roe v. Wade, supra.