135 N.J. Super. 50 (1975)
342 A.2d 574
JUDITH PONTER, R.P. GOTCHEL, M.D.; R. KESSLER, M.D.; R.A. RODGERS, JR., M.D.; J.P. BURNS, JR., M.D. INDIVIDUALLY AND COLLECTIVELY AS ASSOCIATES OF THE WESTWOOD OBSTETRICAL AND GYNECOLOGICAL ASSOCIATES, P.A., A PROFESSIONAL ASSOCIATION, PLAINTIFFS,
v.
JOHN PONTER AND AETNA CASUALTY AND LIFE CO., DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
June 9, 1975.
*51 Mr. John L. Ensminger for plaintiff Judith Ponter (Camden Regional Legal Services, Inc.).
Ms. Phyllis G. Warren and Mr. Raymond J. Lesniak for plaintiffs Judith Ponter, Gotchel, Kessler, Rodgers, Burns & Westwood Obstetrical and Gynecological Associates, P.A. (New Jersey State Office of Legal Services).
Mr. Leonard C. Horn for defendant Aetna Casualty and Life Co. (Messrs. Horn, Weinstein & Kaplan, attorneys).
No one appearing for defendant John Ponter.
GRUCCIO, J.S.C.
The facts in the instant case are not disputed and are as follows: Plaintiff Judith Ponter and defendant John Ponter are married but have been living separate and apart since 1969. During the period they co-habited three children were born. Judith is due to give birth to another child fathered by someone other than her husband. She has unilaterally decided that she no longer desires to utilize *52 her capacity to procreate and wishes to effectuate this end by the means of sterilization.
Throughout the term of her present pregnancy and for some ten years preceding it, Judith Ponter has received obstetrical and gynecological care from Drs. R.P. Gotchel, R. Kessler, R.A. Rodgers, Jr., and J.P. Burns, all being affiliates of Westwood Obstetrical and Gynecological Associates, P.A. These individual doctors and the professional association are also plaintiffs herein. Judith Ponter planned to have one of these doctors perform the sterilization within one day subsequent to the delivery of her expected child. Such an operation can be performed most economically and efficiently within the time period. However, the doctors will not perform such an operation unless Judith obtains the consent of her husband John Ponter, which she is unable to procure.
Plaintiff doctors, as well as other doctors engaged in similar practices through the State, require spousal consent prior to the performance of sterilization operations. By this means the doctors seek to protect themselves against potential civil liability which might arise at the behest of the nonconsenting spouse. In light of the fact that there has never been a declaration as to the law in New Jersey on this point, such a precaution is not without basis.
In this action Judith Ponter seeks to have this court determine whether a married woman has a constitutional right to be sterilized without spousal consent. The doctors and professional association further seek to enjoin John Ponter from instituting any action against them for the performance of the operation without his consent.
Plaintiffs' action is based in large measure on the theory of law established in the landmark cases of Doe v. Bolton, 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973), and Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). These cases establish a new era in women's continuing struggle for the establishment of their individual rights.
*53 In Bolton and Wade the Supreme Court dealt with the issue of a woman's right to an abortion. It held that at least in the first trimester of a pregnancy such a right emanates from the Bill of Rights and is protected against unwarranted state interference by the Fourteenth Amendment. The court further established that within that term only state restrictions which were related to the state's interest in "safeguarding health, in maintaining medical standards and in protecting potential life" Roe v. Wade, supra 410 U.S. at 154, 93 S.Ct. at 727, would pass constitutional muster. The decision for or against the operation is left to the woman and her doctor alone.
The precedent established by Bolton and Wade, although controversial from the moralists' and theologians' viewpoint, is required to be followed by all lower courts. The Supreme Court by these decisions sanctioned the ideology that a woman has a right in most circumstances to control her reproductive functions. Indeed, the ideology was raised from the "bandwagon" of various women's rights movements to constitutional proportions.
Having thus established the major thesis which binds all courts, we now must look to the application of this theory as delineated and expanded by other courts.
Other courts following Bolton and Wade, have struck down state statutes requiring spousal or parental consent in abortion situations. The courts have consistently held that such a requirement falls within the proscription set up by Wade against restricting the availability of abortions based on other than health related considerations. Doe v. Doe, 314 N.E.2d 128 (Mass. 1974); Coe v. Gerstein, 376 F. Supp. 695 (S.D. Fla. 1973); Jones v. Smith, 278 So.2d 339 (Fla. App. 1973), cert. denied 415 U.S. 958, 94 S.Ct. 1486, 39 L.Ed.2d 573 (1974).
An examination of the abortion related decisions reveals that a hierarchy of rights is evolving which includes the rights of the mother, the rights of the father and the rights of the fetus. The right of a woman to determine whether or *54 not to bear children has been consistently given priority within this hierarchy.[1]
Notwithstanding the fact Skinner v. Oklahoma, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942), characterized procreation as a basic civil right, the courts have still considered a woman's right not to procreate paramount. In fact, when the rationale of Skinner was asserted by a potential father in an attempt to enjoin the termination of his wife's pregnancy, the court in Doe v. Doe, supra, limited the application of the holding of that case. The court in Doe v. Doe (at 130) characterized the right described in Skinner as one which "involved a shield for the private citizen against government action, not a sword of government assistance to enable [the potential father] to overturn the private decisions of his fellow citizens." Doe v. Doe, supra, at 130.
Granted there are distinctions both factually and as to the legal issues raised which can be drawn between the cases cited supra and the instant case.
For one thing, we are not dealing here with a woman's right to an abortion but rather with a married woman's right to a sterilization operation regardless of her husband's desires. Furthermore, there is no New Jersey statute herein which requires spousal consent before the operation is given, However, in light of the trend of law developing from the cited cases, these are clearly distinctions without differences.
Courts have refused to grant relief to plaintiffs in various instances where operations were performed on their spouses without plaintiffs' consent. Murray v. Vandevander, 522 P.2d 302 (Okl. App. 1974); Janney v. Housekeeper, 70 Md. 162, 16 A. 382 (Ct. App. 1889); Herko v. Uviller, 203 Misc. 108, 114 N.Y.S.2d 618 (Sup. Ct. 1952); Pratt v. Davis, 224 Ill. 300, 79 N.E. 562 (Sup. Ct. 1906). These cases were based on the premise that an individual, regardless of his or *55 her marital status, has a right to receive medical treatment. As the court referred to in Jones v. Smith, supra, citing Union Pacific Ry. Co. v. Botsford, 141 U.S. 250, 251, 11 S.Ct. 1000, 35 L.Ed. 734 (1891), "No right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law." (at 342)
In Murray v. Vandevander, supra, a husband who did not consent to his wife's hysterectomy sued the physician and the hospital for loss of consortium and deprivation of the right to reproduce another child. The court declined to grant relief, finding that a married woman had a right to her health and such right could not be qualified by the requirement of spousal consent. The court found that the right of a competent person to control his or her body to be paramount to his or her spouses' desires. In accord with this principal is Karp v. Cooley, 493 F.2d 408 (5 Cir.1974).
In effect, the courts in Doe v. Rampton, 366 F. Supp. 189 (D.C. Utah 1973); Doe v. Doe, supra; Coe v. Gerstein, supra, and Jones v. Smith, supra, in striking down certain state requirements based on nonmedical criteria for abortions and sterilizations, eliminated the distinction between surgical operations in general and abortions or sterilizations.
This court recognizes here, as did the court in Doe v. Doe, supra, the sensible, logical and well-reasoned desirability of consultation between husband and wife regarding decisions in such matters. However, this is not to say that the spouse does or should have a power of veto.
It is this court's opinion that Judith Ponter has a constitutional right to obtain a sterilization operation without the consent of her husband. Such protection is available whether it be in the form of the proscription of state action requiring the contrary or refusing to recognize the spouse's civil suit against the treating physician as meritorious. Cf. Shelley v. Kraemer, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948).
*56 Whether such a unilateral decision on the part of one spouse would be sufficient basis for a divorce, either on its own grounds or as evidence of desertion or extreme cruelty, is for the legislators or the courts to determine at another time. It is not before this court. Indeed, the exercise of many constitutional rights by a spouse could lead to marital discord and ultimate divorce. One spouse may insist that he or she wants to be an involved politician or legislator whose duties would require almost total absence from the marital abode, contrary to the desires of the other spouse. A spouse may exercise religious freedom so obnoxious to the marriage partner's beliefs that marital discord could result. Such ramifications should not be considered herein.
Women have emerged in our law from the status of their husband's chattels to the position of "frail vessels" and now finally to the recognition that women are individual persons with certain and absolute constitutional rights. Included within those rights is the right to procure an abortion or other operation without her husband's consent. A natural and logical corollary of those rights is a right to be sterilized without her husband's consent.
Having determined the right of the wife aforesaid, I do not find it necessary or proper to grant the injunctive relief requested by plaintiff doctors and professional association.
The action against Aetna Casualty and Life Company, the malpractice carrier, is dismissed. They are not a necessary party to these proceedings.
NOTES
[1] Of course, the state has the superior right when regulating in the area defined by Roe v. Wade, supra.