149 N.J. Super. 478 (1977)
374 A.2d 57
JOHN ROTHENBERGER, JR., INDIVIDUALLY, AND AS GUARDIAN AD LITEM OF AN UNBORN INFANT, PLAINTIFF,
v.
JANE DOE, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided April 20, 1977.
*479 Mr. Richard P. Maggi argued the cause for plaintiff (Messrs. Goldstein and Toto, attorneys).
No one appeared for the defendant.
LESTER, J.S.C.
The question presented in this case is whether a natural father's consent is required for the decision of a mother to abort a fetus during the first trimester of pregnancy. No appearance having been entered by defendant, the following are factual allegations of plaintiff.
Plaintiff and defendant had intercourse in and about the month of March 1977, resulting in a pregnancy on the part of defendant. That pregnancy continues as of the date of this decision. The parties are not married to each other, nor have they been married to any other person prior hereto. The verified complaint indicates that defendant has arranged, or plans to arrange, a surgical intervention to terminate the pregnancy tomorrow, interfering with the father's asserted right to procreate.
Plaintiff has, as indicated by counsel, demanded, and continues to demand, that defendant allow the pregnancy to continue unabated to its full and natural term, culminating in the expected birth of the child. Evidently, defendant refused, and continues to refuse, to accept that suggestion and has manifested her intention to abort.
Counsel for plaintiff also argues that the fetus, as an unborn human being itself, has a right to life that must be asserted through a guardian ad litem to prevent the planned abortion. This aspect of the case must be dismissed immediately since it has been determined conclusively by the United States Supreme Court that "the unborn have never been recognized in the law as persons in the whole sense," Roe v. Wade, 410 U.S. 713, 162, 93 S.Ct. 705, 731, 35 L.Ed.2d 147 (1973), and that during the first trimester of pregnancy a decision may be reached and effectuated to abort the fetus, free of any interference by the State. Id. at 163, 93 S.Ct. 705, Doe v. Bolton, 410 U.S. 179, 93 S.Ct. 739, 35 *480 L.Ed.2d 201 (1973). The mother's right to an abortion decision is exclusively her prerogative and is founded on her constitutional right to privacy. Roe v. Wade, supra, 410 U.S. at 152-154, 93 S.Ct. 705.
Similarly, her right is not conditioned upon consent of the husband or natural father. Claims by husbands that the decision of their wives to abort a fetus interfere with their own rights to procreate have been categorically rejected in other jurisdictions. Doe v. Doe, 314 N.E.2d 128 (Mass. Sup. Jud. Ct. 1974); Coe v. Gerstein, 376 F. Supp. 695 (D. Fla. 1973), app. dism. 417 U.S. 2799, 94 S.Ct. 2246, 41 L.Ed.2d 68 (1974) and aff'd 417 U.S. 281, 94 S.Ct. 2247, 41 L.Ed. 2d 70 (1974). In Jones v. Smith, 278 So.2d 339 (Fla. Sup. Ct. 1973), cert. den. 415 U.S. 958, 94 S.Ct. 1486, 39 L.Ed.2d 573 (1974), the Florida court held an unmarried father had no legal standing to seek an injunction against the planned abortion by the mother. A number of ingenious theories advanced by plaintiff in that case were rejected by the Court, including the contention that the mother, by engaging in sexual intercourse, had waived her right to privacy; that by seeking an abortion the mother had abandoned the child; and that the father's right to raise the child arose from an implied contract pursuant to which the father had agreed to support any child conceived by the mother through their sexual activity.
In our own State it has been stated that "women are individual persons with certain and absolute constitutional rights. Included within those rights is the right to procure an abortion or other operation without her husband's consent. * * *" Ponter v. Ponter, 135 N.J. Super. 50, 56 (Ch. Div. 1975). While this statement arguably is a dictum of the court, it is representative of current legal analysis in this jurisdiction. This is especially true since the holding of that case was that a husband has no legal right to interfere with the decision of his wife to undergo sterilization, despite the husband's objection that such an operation would effectively bar his personal right to procreate. Plaintiff's contention in *481 the instant case that the decision of the unmarried mother to abort would curtail his right to procreation palls by comparison with the right asserted by the husband in Ponter, which claim was rejected by a coequal court.
More recently, it has been held by the United States Supreme Court that statutes requiring spousal consent to abortions are unconstitutional deprivations of a woman's right to abortion during the first 12 weeks of pregnancy. Planned Parenthood of Central Missouri v. Danforth, 428 U.S. 52, 96 S.Ct. 2831, 49 L.Ed.2d 788 (1976). The Danforth court reasoned that if a state is barred from interfering with such a right, it may not give a spouse unilaterally the ability to prohibit the wife from terminating her pregnancy. Id. at 70, 96 S.Ct. 2831. If the above is true with respect to spouses, it is a fortiori true of nonmarried fathers.
In the present case, while there is no question of the validity of a statute, any compulsion by a state court to require consent of a natural father would constitute unauthorized and unconstitutional state interference. Shelley v. Kraemer, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948).
Even without regard to constitutional limitations on state interference with a woman's desire to terminate pregnancy, it has been determined that while courts are naturally reluctant to interfere in decisions reached in marriage, [i]nasmuch as it is the woman who physically bears the child and who is the more directly and immediately affected by the pregnancy, as between the two, the balance weighs in her favor. * * *" Planned Parenthood of Missouri, supra at 71, 96 S.Ct. at 2842. We agree in this assessment and, furthermore, state that where there is no marital relation involved, the natural father has even less equity in compelling the mother to suffer an unwanted pregnancy.
Assuming, arguendo, that the law were not settled against the contentions advanced by plaintiff  and I find that it is  the court would be faced with a serious problem of enforcement. Counsel for plaintiff has argued that the sole remedy it seeks in this action is an injunction against the planned *482 abortion. The only possible way that the court could enforce such an injunction would be to confine. The alternative is merely to threaten a civil penalty for contempt if the abortion proceeds nonetheless. Assuming there were such a violation of this court's order by a young lady who is in school, who is four to six weeks pregnant, with or without medical testimony of her psychiatric condition, what are the alternatives open to the court? Fine her? Impose a jail sentence? The court will neither devise a penalty nor place a monetary value on either a woman's right to terminate pregnancy or on the potentiality of the four to six-week-old fetus. The court sees no possible way, from a practical viewpoint, of enforcing such an injunction even if the law arguably justified the injunctive relief sought.
The application for an order to show cause with temporary restraints is denied. The complaint is dismissed with prejudice.