STATE OF NEW JERSEY, DEFENDANT IN ERROR, v.
DOMINICK SORGE, PLAINTIFF IN ERROR.

Argued October 3, 1939—Decided January 2, 1940.

Before BROGAN, CHIEF JUSTICE, and Justices DONGES and PORTER.

For the defendant in error, *Arthur C. Dunn,* prosecutor of the pleas; *Peter J. McGinnis,* first assistant prosecutor.

For the plaintiff in error, *Charles W. Chadwick* and *Anthony A. Calendra.*

BROGAN, CHIEF JUSTICE. This case comes before us on writ of error to the Passaic County Court of Quarter Sessions. The plaintiff in error stands convicted of rape. The date on which the crime was committed was May 9th, 1935, the place, the city of Paterson. The proofs indicate that the plaintiff in error enticed one Helen McClaren into his automobile in the city of Newark, ostensibly for the purpose of taking her to Montclair, Essex county, where she lived as a domestic servant and that the crime was committed in the car. Trial on this indictment was not moved until January 19th, 1939, for the apparent reason that shortly after the commission of the offense Miss McClaren, twenty-two years of age at the time, became insane and has been, since June 10th, 1935, confined in the Greystone Park Hospital for the Insane.

There was testimony from which the jury might reasonably have inferred that her mental instability and collapse resulted from her experiences of May 9th. The testimony shows that immediately after this outrageous assault upon her she reported the facts to the lady in whose employ she was, as a result of which Miss McClaren finally went to the headquarters of the police department in Paterson. There she made

a criminal complaint. The plaintiff in error was at once arrested and confronted by the girl. At that time, and on the trial of this indictment, Sorge unhesitatingly admitted having had sexual intercourse with the girl and claimed that she had consented thereto. Throughout the record the testimony of various witnesses is to the effect that statements were made to them by Miss McClaren that she had been attacked and ravished; that she had been beaten and maltreated generally, and all this without objection on the part of the plaintiff in error. The identification of Sorge by Miss McClaren is not open to question. There was plenary evidence to support the conclusion that she had been maltreated, being bruised and scratched about the head, face and body. An examination by a physician made the following day indicated that her sexual organs had been bruised and ruptured within forty-eight hours prior to the time he made his examination.

The plaintiff in error in a written statement voluntarily made, which was put in evidence without objection, admitted the sexual intercourse but denied that the same was contrary to her will. His testimony at the trial was to the same effect. The sharp issue then is whether she had expressly or tacitly consented thereto.

The crime of rape consists in having unlawful carnal knowledge of a woman without her free and conscious consent.

On May 14th, 1935, her statement was written down by members of the police department at Paterson headquarters. The defendant, Sorge, was called in and asked if he had any relations with Miss McClaren. He said he had. When he was told that he was charged or would be charged with the crime of rape he said, apparently to her, "And you were willing." At that point she jumped from her chair and said, "If I was willing then why did you choke me?" This testimony describing what happened at police headquarters was given by Mr. Miller, the father of the girl's employer. There was no objection to it.

The main assignment of error concerns the testimony of Charles Pirola, a sergeant of police. He testified that he brought Sorge to Paterson from Bloomfield police headquarters where he had been in custody and conducted Sorge into

the presence of Miss McClaren and some witnesses. Immediately upon his entering the room she cried, " 'That is the fellow that assaulted me' and we asked him if that was right—was that the truth? and the defendant lowered his head and he said nothing."

A little further on in the testimony of the sergeant he indicated that before any written statement was taken either from the defendant or from Miss McClaren the defendant did make reply to the effect that what he did on the night of May 8th, or the morning of May 9th, was with her consent to which she replied, rising from her chair, "If it was with my consent why did you choke me?" Thereafter the statement of Sorge mentioned above was offered in evidence without objection. It was dated May 14th and the substance of it is that Helen McClaren after some persuasion yielded to him and consented to the intercourse. The testimony of Pirola, first, that when defendant was confronted with the girl and told what the charge was he lowered his head and stood mute; and, second, that when he said that the intercourse took place with her consent she exclaimed, "If it was with my consent why did you choke me?" is in the case without any objection or exception.

The witness then identified Miss McClaren's statement as having been made in his presence and signed by her, and further that her statement was read in the presence of Sorge with opportunity for him to answer if he so desired. It further appears from the testimony of this witness that Sorge was given opportunity to answer if he wished, but that at first he made no statement at all; "He just lowered his head this way [indicating] and he stood that way and we asked him if it was right, and the truth, what she said." At this point in the testimony of Sergeant Pirola counsel for plaintiff in error objected, saying, "This is a statement made by the complaining witness in this case and is the kind of proof that does not give me opportunity to cross-examine on. The complaining witness is not here in court and the proof offered now I have no opportunity to cross-examine her on. You can see the difficulty and handicap I am under." Apparently the state's attorney intended at that time to offer the statement

536

in evidence. It was not offered as part of *res gestæ* (nor could it have been) but "as showing a course of conduct on the part of this defendant * * *." The court then said, "You can do it orally without having her statement in evidence," whereupon the statement was marked for identification. Counsel then told the witness that he might refresh his recollection from the statement and concluded by saying, "Just tell us what he said, if anything, in response to anything she said in the statement." Thereupon the witness was cross-examined in a preliminary way and his testimony showed that the statement in question was taken by a policewoman in his presence and hearing and that the statement when finished was read to the defendant and Miss McClaren, both present at the same time, and that the witness heard it read. Obviously the witness then proceeded to read Miss McClaren's statement into the record; in fact, he had read about half of it before defense counsel interposed an objection, thus—"I object to the witness reading· a statement which is not in evidence." The court took the witness in hand and after again hearing the witness say that he was actually present and heard the statement made at the time, overruled the objection, and the witness, Pirola, proceeded to read the balance of Miss McClaren's statement which, if competent, made out a *prima facie* case of rape. That part of the statement read after objection by the defendant was a most damning piece of evidence, reciting as it did in detail the commission of a brutal and outrageous crime. It had, of course, a very damaging and telling effect against the defendant. At the conclusion of the reading the court said, "What comment was made to that, if any, by the defendant?" The witness again replied, "He admitted having intercourse with the girl—the only comment he made was that he didn't force the girl to it—he said that she was willing."

We are unable to say from the record at what time in the progress of the events at police headquarters in Paterson this comment or answer of the defendant was made. There is testimony that would justify us in believing that it was made prior to the written statement of Miss McClaren and again there is testimony which would justify us in thinking that

the defendant's reply concerning the girl's consent was made after her statement was written down and signed and read in her presence to Sorge. The contents of the statement in the main was corroborated by the testimony of Nicholas DeLuccia, a detective attached to the Paterson police department, and without objection.

Hearsay evidence, i. e., that which does not derive its value from the credit to be given the witness himself, but necessarily rests on the veracity and competency of some other person is not tolerated in our system of jurisprudence unless it be within one of the well known and strictly defined exceptions. Under the facts in this case its only justification would have to rest upon the exception which is known as an "admission against interest," and unless it be that, the reading of the statement was clearly erroneous. It should be noted, of course, that the witness, Pirola, might with legal propriety have testified to what had happened on the occasion in question and to what he had seen and heard from Miss McClaren when confronted by Sorge, and in turn what the defendant said upon being confronted by Miss McClaren. If it appeared that he was confronted by this outraged girl, who accused him, especially as here, in the presence of witnesses, under circumstances where he had the opportunity to speak and did not, then the testimony as to what occurred would be competent and it would be for the jury to infer that which reasonably might have been deduced from his silence. The defendant here was not surrounded by circumstances that in any way excused him from making what comment or answer he desired to make. Cf. Donnelly v. State, 26 N. J. L. 601, 612; State v. D'Adame, 84 Id. 386, 392.

We turn now to the consideration of the objection itself, since the state urges that plaintiff in error takes nothing by the objection made. Defendant's counsel said, "I object to the witness reading the statement which is not in evidence." The objection was overruled and an exception allowed which was sealed and signed by the learned trial court. We think the objection for the reason stated was sufficient to apprise the trial court of the ground upon which objection was made. The important element in the charge of rape is whether or not the unlaw-

ful act was done with or without the consent of the woman who makes complaint. In this case the intercourse was admitted and the defendant in the police headquarters when he was confronted with Miss McClaren and before trial of the cause answered that she consented to his act. Therefore, he did make denial of that which went to the essence of the crime charged.

Since this case will have to be tried anew we have thought it wise to point out the vice in the proceeding, *i. e.,* allowing the statement of Miss McClaren who could not, and we assume cannot at the next trial, appear to testify; that the statement made by her and read by the state's witnesses does violence to the rule against hearsay. This we think was a violation of a substantial right.

We have examined the other points made by the plaintiff in error, chiefly that the court erred in refusing to direct an acquittal at the end of the state's case, and on this we are convinced that there is no merit in the argument.

Judgment will be reversed and a *venire de novo* allowed.