STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. JAMES HOLROYD, EUGENE D. ELWELL AND DONALD MURRAY, DEFENDANTS-APPELLANTS.

Argued January 5, 1965—Decided March 15, 1965.

*Mr. John A. Yacovelle, Jr.* argued the cause for appellants (*Mr. Samuel P. Orlando*, attorney).

*Mr. Norman Heine*, Camden County Prosecutor, argued the cause for respondent.

The opinion of the court was delivered

PER CURIAM. The defendants, James Holroyd, Eugene D. Elwell, and Donald Murray, were tried before a jury in Camden County and convicted for conspiracy to obstruct the due administration of the Motor Vehicle Traffic Laws. After the trial judge denied their motion for a new trial, they appealed. We certified the matter on our own motion before argument in the Appellate Division.

The indictment charged that between January 1, 1959 and June 29, 1961, the defendants as police officers of the Borough of Barrington unlawfully agreed to dispose of certain motor vehicle traffic offense cases by downgrading the tickets originally issued by the arresting officer from operating offenses (*e. g.*, speeding) to standing offenses (*e. g.*, illegal parking), and that in furtherance of such illegal agreement parts of "fines" paid by the traffic offenders were unlawfully diverted. The overt acts specifically set out in the indictment concerned a speeding ticket issued by the defendant Holroyd to one Robert Wright on September 15, 1959.

At the trial Wright testified that he had been given a speeding ticket on September 15, 1959, for driving 41 miles per hour in a 25 mile per hour zone. On October 14, 1959 Wright left his copy of the ticket and a $15 check at the Borough Hall. On October 16, 1959 the check was deposited in the borough account. The magistrate of the borough's municipal court, when shown the Wright ticket, testified that it had been issued by defendant Holroyd and identified a receipt for $5 for a parking violation, dated January 8, 1960, as having been issued by defendant Murray. The magistrate further testified that defendant Elwell was the violations clerk in 1959 and that defendant Murray was violations clerk during 1960.

The functions of the violations clerk were to keep a record showing the disposition of all tickets issued, and to accept fines and give receipts.

The official documents of the borough were introduced, in evidence. With regard to the Wright ticket, they showed: Wright had been issued a ticket for speeding on September 15, 1959, and the ticket had been visibly altered from speeding to illegal parking. An entry in the traffic docket, dated January 8, 1960, showed a plea of guilty to illegal parking by Wright and the imposition and collection of a $5 fine. The records did not indicate a receipt of the $15 Wright check, dated Otcober 14, 1959, and the records did not account for the $10 difference between the $15 payment and the $5 receipt.

The State introduced in evidence two statements made by each defendant. The first statement was given to Deputy Attorney General Budd M. Rigg on November 2, 1961, and the second was given to Camden County Assistant Prosecutor Sidney Kaplan on September 28, 1962.

In his statements, Elwell admitted that he altered a number of tickets he had issued because of hardship on the violator or because of friendship or at the request of fellow police officers. He also said that in addition to his duties as a patrolman, he had served as violations clerk during the year 1959. As violations clerk, after a speeding summons had been altered to parking, he would enter it in the docket book as a parking violation. He admitted endorsing the $15 Wright check but had no explanation for his failure to account for its receipt in the court's records. In his statements, Murray admitted altering tickets and consenting that tickets be altered because of hardship on the violators or friendship for them. In addition to his job as patrolman, he served as violations clerk for 1960. With reference to the Wright ticket, he acknowledged that as violations clerk he had received $5 for illegal parking and had made out a receipt accordingly. In his statements, Holroyd admitted that he had participated in the practice of altering tickets from speeding to illegal parking. He admitted that

he had issued Wright's speeding ticket but could not recall whether he was the officer who had physically altered it. However, he stated that it was the practice that a ticket would not be altered without the issuing officer's consent.

All the defendants testified in their own behalf, and gave testimony generally consistent with that introduced through their statements.

█ On this appeal the defendants contend that the trial court erred in admitting their statements into evidence without holding a hearing to determine whether the statements were voluntarily made. Before the statements were introduced into evidence, the trial judge excused the jury and held a hearing to determine their admissibility. At that hearing the defendants objected to the admissibility of the statements on the ground that they had been coerced by Mr. Rigg's warning to them that if they failed to answer, proceedings might be instituted against them to have them removed from the police department. No testimony was produced by either the State or the defendants as to the manner in which the statements were taken. The entire hearing was devoted to determining what parts of the various statements should be deleted as irrelevant to the case. Thereafter, the statements as deleted were read to the jury by the court reporter who had taken and transcribed them. At the oral argument before us the State contended that its failure to introduce evidence to show the circumstances under which the statements were taken was due to an understanding among the parties and the court that since the defendants' sole objection was on the narrow legal ground that Mr. Rigg's warning, *per se,* made their statements involuntary, the State was not required to go through the formality of showing that the statements were not taken under otherwise coercive circumstances. We directed that this issue be reurned to the trial court for clarification. At the subsequent hearing conducted by the trial court, the respective recollections of the judge, the prosecutor, and counsel who tried the defendants' case were in agreement that the State need not introduce evidence to show that the

statements were not obtained as a result of physical or mental coercion; the defendants merely reserved their right to question the voluntariness of their statements on the narrow legal issue concerning Mr. Rigg's warning. Furthermore, during the hearing before the judge in the absence of the jury and during the remaining course of the trial, defense counsel did not object to the failure of the State to offer testimony relating to the taking of the statements, nor did they offer testimony themselves on this point. We therefore conclude that in the circumstances the State was not required to come forward with evidence of the voluntariness of the statements.

The defendants also argue that the failure of the State to produce evidence before the jury on the issue of voluntariness requires reversal. However, a reading of the transcript of the hearing on remand convinces us that the prosecutor, the court, and defense counsel understood that the State need not produce any evidence before the jury as to the manner in which the statements were taken.

■ Defendants next contend that since neither the State nor they produced any evidence before the jury on the issue of the voluntariness of their statements, the trial court erred in instructing the jury on that issue. However, the defendants' statements, in question and answer form and including Mr. Rigg's warning, had been read to the jury. And defense counsel referred to Mr. Rigg's warning during their summations. Furthermore, no objection was made by defense counsel to the trial court's charge. Under these circumstances there is no merit to defendants' contention.

■ Defendants next contend that, as a matter of law, their statements were involuntary because of Mr. Rigg's warning that their failure to answer his questions might result in their losing their positions with the police department. This very issue was discussed at length in our recent opinion in *State v. Naglee*, 44 *N. J.* 209 (1965). Since the circumstances in the present case are substantially similar to those in the *Naglee* case and the applicable legal principles are identical to those that governed that case, our holding there that those state-

ments were voluntary is determinative of this issue in the present case. Indeed, the circumstances of the giving of the defendants' statements in the present case are even more persuasive of voluntariness than in *Naglee*. For here the defendants gave their statements to Mr. Rigg in the presence of their lawyer.

The defendants complain about certain portions of their statements being read to the jury. As we have already mentioned, the statements were taken in question and answer form. The defendants' objections are focused upon certain of the questions of the interrogators which assumed the defendants' guilt in a manner which the defendants contend was prejudicial. From our examination of these questions, and in view of the defendants' repeated admissions that they had participated in downgrading speeding tickets, we are satisfied that the possibility of prejudice to the defendants is far too remote to warrant reversal on this ground.

The defendants further contend that the acts alleged in the indictment do not constitute the crime of conspiracy under *N. J. S.* 2A:98–1(h) since they amounted to a contempt of court under *R. R.* 8:10–2. As we said in *State v. Naglee, supra,* this court in the exercise of its rule-making power cannot deprive the Legislature of its right to determine the type of conduct which constitutes a substantive crime.

Finally, the defendants contend that their motion for judgment of acquittal at the end of the State's case and at the end of the entire case should have been granted, and that the verdict was contrary to the weight of the evidence. From the facts that we have outlined earlier in this opinion, it is clear that these contentions are without merit.

Judgment affirmed.

*For affirmance* — Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN —7.

*For reversal*—None.