148 N.J. Super. 219 (1977)
372 A.2d 386
STATE OF NEW JERSEY, PLAINTIFF,
v.
ALBERT SMITH, DEFENDANT.
Superior Court of New Jersey, Essex County Court, Law Division (Criminal).
January 21, 1977.
*222 Mr. Paul Murphy, Assistant Prosecutor, for the State (Mr. Joseph P. Lordi, Prosecutor of Essex County, attorney).
Mr. Michael Giles, for defendant (Messrs. Lorber, Giles & Barone, attorneys; Susan J. Barone, Esq., on the brief and of counsel).
SCALERA, J.S.C., Temporarily Assigned.
Albert Smith stands accused of raping his wife in violation of N.J.S.A. 2A:138-1, and of having committed an atrocious assault and battery upon her.
Defendant moves to dismiss the rape charge, asserting that "a husband cannot rape his wife as a matter of law." No court in New Jersey has had occasion to rule directly upon this issue in any reported decision.
The State charges that, on October 1, 1975, defendant "did have carnal knowledge of Alfreda Smith forcibly against her will, contrary to the provisions of" N.J.S.A. 2A:138-1. At oral argument it was stipulated that defendant and Alfreda Smith were legally husband and wife on the date the offense is alleged to have occurred. Thus the issue is one cognizable under R. 3:10-1 et seq.
Defendant contends that New Jersey's statutory provision covering the crime of rape simply codified the pre-existing common law governing that offense and that, at common law, it is settled that a husband cannot be prosecuted and convicted for raping his wife. Moreover, defendant argues that the rape statute in New Jersey should not be judicially expanded *223 to cover such a situation lest the court invade and usurp a legislative prerogative.
The State asserts that our present rape statute, by its terms, proscribes rape of any woman victim regardless of any relationship with or to the person charged. It is urged that this court declare the intent of the Legislature to be that a husband may be prosecuted and convicted of rape of his wife where he engages in forcible intercourse without her consent.
The complex involvement of the philosophical, societal and policy considerations raised are at once evident.
The pertinent part of N.J.S.A. 2A:138-1 provides that
Any person who has carnal knowledge of a woman forcibly against her will * * * is guilty of a high misdemeanor and shall be punished by a fine of not more than $5,000. or by imprisonment for not more than 30 years, or both; * * *.
At common law rape was defined as, "The carnal knowledge of a woman forcibly and against her will." 4 Blackstone, Commentaries [*]210.
In 1796 New Jersey codified the crime of rape in "An Act For The Punishment of Crimes," § VIII, "Rape, What, and How Punished," defining the offense precisely as in Blackstone, as "carnal knowledge of a woman, forcibly and against her will" by "any person" L. 1796. In 1887 the word "and" was deleted leaving the wording, "forcibly against her will." L. 1898, c. 235. Subsequent statutory modifications have not changed this language but have dealt with additional proscriptions engrafted onto the original enactment. L. 1905, c. 159; L. 1910, c. 161; L. 1952, c. 94; State v. Heyer, 89 N.J.L. 187 (E. & A. 1916); State v. Faas, 39 N.J. Super. 306, 307 (Essex Cty. Ct., 1956) aff'd. sub nom. Application of Faas, 42 N.J. Super. 31 (App. Div. 1956).
The principle that a husband as prime actor cannot be guilty of rape committed upon his lawful wife appears to have been accepted without exception by courts and authorities that have treated the subject in this country. Annotation, *224 "Criminal responsibility of husband for rape, assault to commit rape, on wife," 84 A.L.R.2d 1017, 1019 (1962), and the authorities collected therein at 1022; 1 Wharton's Criminal Law and Procedure, § 300 at 628; 2 Burdick, The Law of Crimes, § 476 at 223 (1946); 65 Am. Jur.2d, Rape, § 39 at 782-783; 52 C.J., Rape, § 14 at 1010; 75 C.J.S. Rape § 6 at 467.
This common law principle appears to have its genesis in a statement in Sir Matthew Hale's Pleas of the Crown wherein it is stated,
But the husband cannot be guilty of a rape committed by himself upon his lawful wife, for by their mutual matrimonial consent and contract, the wife hath given up herself in this kind unto her husband, which she cannot retract [1 Hale, Pleas of the Crown 629 (1847)].
Rape consists of forcible sexual penetration by the sex organ of the male into the sex organ of a female without her free and conscious consent. State v. Sorge, 123 N.J.L. 532 (Sup. Ct. 1940) aff'd 125 N.J.L. 445 (E. & A. 1940); State v. Orlando, 119 N.J.L. 175 (Sup. Ct. 1937).
The element of "consent" or lack thereof has troubled jurists and writers alike, given the limitless factual circumstances surrounding the commission of this universally condemned offense. State v. Terry, 89 N.J. Super. 445 (App. Div. 1965); State v. Harris, 70 N.J. Super. 9 (App. Div. 1961); New Jersey Model Penal Code, § 2C:14-1 (Final Report 1971); New Jersey Model Penal Code, § 2C:14-1 (8)(9), Commentary (Final Report 1971); 2 Schlosser, Criminal Laws of New Jersey (3 ed. 1970), §§ 88:1, 88:6 at 442, 444; 1 Wharton, Criminal Law and Procedure, §§ 308-312 at 639-651 (1957); Comment, "Rape and Rape Laws: Sexism in Society and Law," 61 Cal. L. Rev. 934 et seq. (1973) (hereinafter 61 Cal. L. Rev.). See generally Brownmiller, Against Our Will, 380 et seq. (1975). Lord Hale (op. cit.) chose to resolve the issue of consent between husband and wife simply by resorting to principles of contract law. He reasoned that the marriage contract constituted *225 an irrevocable consent by both parties to engage in sexual communication as long as the marriage contract existed. It has been aptly observed that when Hale authored this proposition it was an "accepted view of the law because at that time a valid marriage could not be dissolved except by death, and the only way in which a marriage could be avoided was by a private Act of Parliament." Reg. v. Miller, 2 Q.B. 282, 2 All E.R. 529, 2 W.L.R. 138, 140 (1953).
With the advent of judicial intervention into the marriage relationship, it was recognized that the "consent" of the wife upon entry into the marriage contract could and would be considered revoked by a judicial order of divorce or separation. Hence, prosecutions for rape of a wife have been allowed in such limited circumstances. 84 A.L.R.2d 1017, 1022; Reg. v. Clarke, 33 Crim. App. 216, 2 All E.R. 448 (1949); Baugh v. State, 402 S.W.2d 768 (Tex. Crim. App. 1966); State v. Parsons, 285 S.W. 412 (Mo. Sup. Ct. 1926). Cf. Frazier v. State, 48 Tex. Cr. R. 142, 86 S.W. 754 (Ct. of Crim. App. 1905).
The State urges that our rape statute does brand as criminal a forcible sexual attack by a husband upon his wife because the language of the statute does not specifically exclude from its proscription a wife-victim.
Critics have argued that the creation of such an interdiction would increase the risk of fabricated accusations, unduly invade the sanctity of the marriage relationship, increase the wife's ability to gain an advantage over an estranged husband with respect to property settlements, become a weapon of vengeance for the spurned wife and lessen the likelihood of reconciliation. 61 Cal. L. Rev. 919, 926 n. 34; Comment, "Rape and Battery Between Husband and Wife," 6 Stanf. L. Rev. 719 (1954) (hereinafter cited as 6 Stanf. L. Rev.). These are not totally persuasive arguments when one considers that the law already furnishes an arsenal of such weapons to a woman bent on revenge. Charges of assault and battery, larceny, fraud and other offenses may just as readily be the subject of such false accusations between *226 spouses. Also, reconciliation hardly seems an expected or likely consequence of a relationship that has deteriorated to the point of forcible sexual advances by a husband.
Moreover, it is hardly uncommon for our criminal justice system to deal with false and fabricated criminal charges. Indeed, our jurisprudence is designed to test the very truth or falsity of accusations in all criminal proceedings. We see no basis for the supposition that it will completely and utterly fail to operate in the circumstances here presented, notwithstanding Hale's naked assertion that "It is an accusation easily to be made and hard to be proved and harder to be defended by the party accused, tho never so innocent." 1 Hale, op. cit. at 634.
Rape is necessarily and essentially an act of male self-aggrandizement, while sexual communion mutually entered into connotes and communicates love, respect and a gift of physical pleasure. Rape subjugates and humiliates the woman, leaving her with little retaliatory capability save that provided by law  to charge her attacker so that a civilized society may lawfully exact a just penalty or punishment for the trespass committed.
Because of their uniquely personal and oftentimes violent nature, sex crimes, especially rape, are of great concern to our society. Whether young or old, the woman may suffer permanent emotional repercussions, and the psychological consequences for the victim are impossible to calculate. Even with today's so-called enlightened attitude of sexual behavior, the right of women to govern sexual access to their bodies is universally defended. Thus, the protection afforded to women by our law is basic to any society which deems itself civilized.
As heretofore noted, jurisdictions which have refused to allow such prosecutions have uniformly and summarily rationalized that a husband canot be guilty of rape because the wife, upon entering into marriage, has irrevocably given her consent to sexual communication. They "reason," as did Hale, that the element of lack of consent has not been satisfied. Frazier v. State, supra; State v. Drope, 462 S.W.2d *227 677 (Mo. Sup. Ct. 1971); 84 A.L.R.2d, supra. It would appear that this superficial reasoning has been perpetuated without serious challenge and without consideration of the fact that such a mechanical application of principles of contract law are illogically applied in the area of forcible sexual invasions. 6 Calif. L. Rev. 919 et seq. Yet no one has seriously questioned the underlying authority for Hale's position, content to rest on the statement alone. Cf. Reg. v. Clarence, 22 Q.B.D. 23 (Cr. Cas. Res. 1888) (dissenting opinion by Field, J.), where he observes,
The authority of Hale, C.J., on such a matter is undoubtedly high as any can be, but no other authority is cited by him for this proposition, and I should hesitate before I adopted it. [at 57]
Hale's rationale, in our judgment, if acceptable in a 17th Century setting, simply has lost touch with the reality of the 20th Century. Such reasoning overlooks the basic nature of the rape interdiction created by a civilized society. Rape is essentially a crime of moral effrontery. The affront is to society in the larger sense as with all crimes, but to a rape victim its personal impact is unique. Given monogomy as a recognized societal goal, such reasoning can result in a kind of bondage of a wife, who alone becomes vulnerable as a result thereof.
It is small comfort to a married woman whose husband has forcibly ravished her against her will to know that she may resort to the matrimonial courts to recapture or retrieve her right to sexual privacy. Cf. Reg. v. Clarke; Frazier v. State, Baugh v. State, all supra. If she chooses not to seek such formal (and sometimes, formidable) judicial relief, how can one logically defend the result  that a husband has an unbridled right, protected by law, to force himself sexually upon her at any time he chooses, no matter how far the marriage relationship has deteriorated between them? Truly, society should not today suffer such a situation to continue upon so callous a basis as applications of contract law and the doctrine of consent. It has always been recognized *228 that "marriage contracts cannot be placed on a par with ordinary contractual obligations" because, "[I]n every marriage contract, the state is an interested party." Ploscowe, Sex and the Law, 3 (1951). Pisciotta v. Buccino, 22 N.J. Super. 114 (App. Div. 1952); Lindquist v. Lindquist, 130 N.J. Eq. 11 (E. & A. 1941).
To continue to perpetuate such approval leads to insidious deprivation of sexual privacy to a victimized married woman. Policy considerations labels should not be permitted to thwart justice. Rather, having recognized that all women are entitled to this uniquely female right of privacy, policy considerations should propel us to insist that such lawless invasions not be condoned under the guise of nice applications of contract law.
Under the present law in this country, even though a wife seeks to withdraw consent to sexual access given by her at a time of marriage, by deliberate separation or other declaratory action, she simply cannot do so unilaterally. The illogic of such a result is clear when one realizes that in the case of rape of a woman other than one's wife, the victim's prior consent to sexual access is not a defense where she withdraws or refuses to consent on another subsequent occasion. State v. Auld, 2 N.J. 426 (1949); 75 C.J.S. Rape § 11 at 474. How can one reconcile these two premises? The plain answer is that the law discriminates against the wife rape victim. Howard, "Rape of a Wife," 118 Just. P. 99, 100 (1954).
If we recognize that the issue should not be decided on the basis of the consent doctrine, it would appear that the courts have then resolved the issue upon some inarticulated judicial policy decision encompassing some fear or reluctance to invade the marriage relationship. 6 Stanf. L. Rev. at 724. Writers have rather hastily observed simply that there are "conceptual difficulties involved in making rape a crime between husband and wife." 61 Calif. L. Rev. at 926. It is argued that "[a]lthough wives need some form of protection by the criminal law from the injurious consequences of forcible sexual intercourse with their husbands, rape is *229 a category ill-suited to marriage." 6 Stan. L. Rev. supra, at 725. Defendant argues that such policy considerations and judgments should and must be left with the legislative branch of government, although he concedes that, under appropriate circumstances the judicial branch may interpret statutes to work a change in the pre-existing common law.
For the reasons stated above, this court agrees with neither the rationale nor the policy arguments advanced in support of the principle that a husband cannot be guilty of a rape upon his wife. A close examination of the historical origins of this principle reveal that it is rooted in the ancient concepts of a wife as a chattel and the inviolability of the husband's supreme role in a marriage relationship. While such concepts standing alone have long since disappeared, American courts in their mechanistic application of this principle have failed to come to grips with the changes that have occurred in the status of a wife since the 17th century. In other areas modern jurisprudence has consistently refused to permit such male dominated concepts to stand in the way of equal protection of the laws. The instant case should be no exception.

* * * * * *
The question here, however, is whether this court has the authority, power, or indeed the right to denounce and depart from existing law and, by mandate, change it.
Our rape statute, as heretofore noted, is essentially declaratory of the elements of the common law offense of rape then existing. State v. Heyer, 89 N.J.L. 187 (E. & A. 1916); cf. State v. Quatro, 31 N.J. Super. 51 (App. Div. 1954). Cf. Application of Faas, 42 N.J. Super. 31 (App. Div. 1956), cert. den. 353 U.S. 940, 77 S.Ct. 820, 1 L.Ed.2d 762 (1957), wherein the court, in considering the language of the rape statute observed,
Although not express, the intention that an act by a husband against his wife is not intended to be included may possibly be derived as a matter of historical construction of the common law origins of the offense and from the apparently settled principle that a defendant in a marital relationship with a prosecutrix was privileged thereby. 75 *230 C.J.S. Rape § 6, p. 467. But we have no occasion here to hold that such a privilege exists under our statute. [at 37: emphasis supplied]
Thus the question of whether the enactment of the rape statute encompassed the common law exception precluding prosecution of a husband where he forcibly has carnal knowledge of his wife against her will remains unanswered by the courts in this State.
Certain writers have reasoned that rape consists of "unlawful" carnal knowledge, and hence a husband cannot be guilty of rape because carnal knowledge of a wife is not unlawful even though by force and against her will. 2 Brill, Cyclopedia of Criminal Law, § 895 at 1440 (1923); 1 Wharton's Criminal Law and Procedure, § 305 (1957). Cf. State v. Sorge, 123 N.J.L. 532, 534 (Sup. Ct. 1940) aff'd. 125 N.J.L. 445 (E. & A. 1940), where the court was focusing upon the issue of consent. But this reasoning begs, not answers, the question. The reach of the statutory proscription is what renders the act unlawful. Application of Faas, supra, 42 N.J. Super. at 36-37. If the rape statute proscribes forcible carnal knowledge of a wife by her husband against her will, it is unlawful, notwithstanding the otherwise lawful character of "carnal knowledge" between such parties under different circumstances.
However, as a court of inferior jurisdiction we are bound to follow certain settled axioms in resolving this issue.
We are dealing here with a penal statute whose genesis is rooted in common law. State v. Heyer, supra. Hence, in construing statutes merely declaratory of a common law offense the elements of the common law offense will be recognized. State v. Quatro, 31 N.J. Super. 51 (App. Div. 1951). Where the applicable penal statute does not define the crime the definition must be obtained from the common law. State v. Taylor, 46 N.J. 316 (1966), cert. den. 385 U.S. 855, 87 S.Ct. 103, 17 L.Ed.2d 83 (1966). Statutes must be construed with reference to the common law, and one which is claimed to impose a duty or *231 establish a right which was not recognized by common law will be strictly interpreted to avoid the asserted change. Carlo v. Okonite-Callender Cable Co., 3 N.J. 253 (1950). More particularly, a penal statute must be strictly construed lest it be applied to persons or conduct beyond the Legislature's contemplation. Neeld v. Giroux, 24 N.J. 224, 228 (1957); State v. Leonardo, 109 N.J. Super. 442, 448 (App. Div. 1970). Such a rule is grounded in the principle that the power of punishment is vested in the legislative and not the judicial branch of government. State v. Woodruff, 68 N.J.L. 89 (Sup. Ct. 1902); State v. Holroyd, 44 N.J. 259 (1959).[1] Indeed, a statute is not presumed to make any change in the common law beyond that expressed or fairly implied in its provisions, Blackman v. Isles, 4 N.J. 82 (1950), and if a change in the common law is to be effected by statute, legislative intent to accomplish the change must be clearly and plainly expressed. Carlo v. Okonite-Callender Cable Co., supra. State v. Western Union Tel. Co., 12 N.J. 468, 486 (1953), notes that "Before a statute supersedes the common law, there must be some express or specific statement to that effect." For the Legislature is presumed to be familiar with the common law. Yanow v. Seven Oaks Park, Inc., 11 N.J. 341 (1953).
The State here urges that this court construe that portion of the rape statute which interdicts "carnal knowledge of a woman forcibly against her will" to include a husband's forcible sexual attacks upon a nonconsenting wife. Recognizing that sensitive evaluations will arise in such prosecutions, the State proposes that the rape statute, when applied in prosecuting a husband-defendant, be judicially limited in scope. It suggests that in such instances this court rule that there does exist a rebuttable presumption of consent by the wife-victim because of the relationship *232 and further, that the element of "forcible" carnal knowledge encompass only those instances where more than minimal physical violence accompanies the sexual assault. Both qualifications are not now elements of rape as against a non-husband defendant. 65 Am. Jur.2d, Rape, § 1 at 762; 2 Schlosser, Criminal Laws of New Jersey, supra, § 88:1 at 442.
Worthy of note is the recent proposal of the New Jersey Criminal Law Revision Commission in this area. In reconsidering and redefining the crime of rape in the proposed New Jersey Penal Code, the Commission suggests that such offense not include sexual invasion of a wife of the aggressor except when it occurs between spouses "living apart in a state of separation." Sec. 2C:14-6 b (Final Report 1971). See also, § 2C:14-6(b), Commentary. (This provision represents a departure from the position taken by the American Law Institute's Model Penal Code, where the privilege is removed only upon a judgment of divorce or a "decree of judicial separation" following the common law approach. Sec. 213.6(2) (Proposed Official Draft 1962). See also, § 207.4(4), Comment (Tent. Draft No. 4, 1955).
Additionally, it is noteworthy that, after public hearing on the proposed New Jersey Penal Code, § 2C:14-6(b) was specifically amended to require that the privilege not become inoperative until spouses are "living apart in a state of legal separation or for a period of more than 18 months." Assembly Bill 642 Sec. 2C:14-5b at 65 (Adopted June 14, 1976). One may conclude that the Assembly's addition of a specific time requirement for the separation period reflects that body's concern for the policy considerations in this area.
We have wrestled with the conflicts apparent here. At common law generally a husband could not be prosecuted for raping his wife absent a judicial order of separation. Howard, "Rape of a Wife," 118 Just. P. 99 (1954); Coddington, "Rape of a Wife," 106 Just. P. 199 (1932); 65 Am. Jur.2d, Rape, §§ 39 and 50; 84 A.L.R.2d, supra at 1017, 1019; 1 Hale, Pleas of the Crown 628.
*233 New Jersey's rape statute unquestionably sought to codify and preserve the common law definition and elements of that offense. State v. Heyer, 89 N.J.L. 187 (E. & A. 1916); State v. Taylor, 46 N.J. 316 cert. den. 385 U.S. 855, 87 S.Ct. 103, 17 L.Ed.2d 83 (1966); State v. Faas, 39 N.J. Super. 306, 307 (Essex Co. Ct. 1956), aff'd sub nom. Application of Faas, 42 N.J. Super. 31 (App. Div. 1956). An intent to change that common law is neither plainly nor clearly expressed in the statutory enactments since the first legislation, nor can it be fairly implied therefrom. Fivehouse v. Passaic Valley Water Comm., 127 N.J. Super. 451, 456 (App. Div. 1974).
This court has sought to note rather forcibly its disagreement and lack of confidence in the continued perpetuation of the common law rule here applicable. However, we feel that we lack the authority to simply ignore the settled principles of law that bind us and depart from the common law rule because, in our judgment, it is unfair and discriminatory, and thus create, with a sweep of the pen, criminal responsibility where none has heretofore existed. The principles of statutory construction of penal statutes above noted govern this court with a compelling force derived from our system of jurisprudence which must not be lightly disregarded.
Thus viewed, it is more properly a legislative, rather than a judicial function, to determine or redetermine the type of conduct which will constitute the substantive crime of rape, especially when, as here, serious societal objectives, philosophical evaluations and moral judgments are involved.
The pending New Jersey Model Penal Code provisions in this area referred to above, demonstrate some cognizance of the many problems and often conflicting considerations which have been dealt with in this opinion. The Code provisions further indicate that Legislators are sensitive to the inequities that exist under the present status of the law. In reconciling these considerations at least the Assembly has presumably not only utilized the *234 expertise available to it, but has also assayed public opinion. This court must then be content to permit the collective legislative judgment to resolve this unique and perplexing issue.
Thus, for the reasons hereinabove set forth, this Court is constrained to conclude that N.J.S.A. 2A:138-1 does not now permit a prosecution for rape where the alleged perpetrator, at the time of the alleged offense, is still legally married to the prosecutrix, absent a judicial order of separation or divorce. To hold otherwise would be to abrogate the common law ratified at the time of enactment of our original rape statute. State v. Heyer, supra.
Accordingly, defendant's motion to dismiss that count of the indictment charging him with rape is hereby granted.
NOTES
[1] Rev'd on other grounds, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967).