STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. DANIEL
MORRISON, DEFENDANT-RESPONDENT.

Argued November 5, 1980—Decided February 10, 1981.

*Debra L. Stone*, Deputy Attorney General, argued the cause for appellant (*John J. Degnan*, Attorney General of New Jersey, attorney).

*David M. Freeman* argued the cause for respondent (*Ruggierio and Freeman*, attorneys).

The opinion of the Court was delivered by

PASHMAN, J.

We have held today in a companion case, *State v. Smith*, 85 *N.J.* 193 (1981), that a husband could be convicted of raping his own wife under our former rape statute, *N.J.S.A.* 2A:138–1. In *Smith*, we considered the common law marital exemption from rape, which was never expressly adopted in this State, and determined that such an exemption would not have applied to defendant's acts against his estranged wife. The presence of additional circumstances here offers even more compelling reasons than those in *Smith* for holding that defendant could be convicted of raping his wife.

Daniel and Rosita Morrison were married in 1966. After a period of marital problems and violence, Rosita Morrison moved out of their home in May 1976, apparently taking along their seven-year-old daughter. Husband and wife continued to see each other after the separation, but the hostilities seemed to intensify. Mrs. Morrison filed a complaint for divorce on the ground of extreme cruelty on August 27, 1976 in the Superior Court, Chancery Division. Two days later, the court issued a temporary restraining order against defendant, restraining him from "harassing, threatening or harming" Mrs. Morrison or "contacting [her] either at her place of residence or place of employment." On October 26, 1976, defendant and his wife executed a separation agreement. The agreement included a non-molestation clause which stated:

Each party shall be free from interference, authority and control, direct or indirect, by the other, as fully as if he or she were single and unmarried. Neither shall impose on the other or demand on the other a lifestyle or morality that is contrary to their preference. Neither shall molest the other or compel or endeavor to compel the other to cohabit or dwell with him or her.

According to defendant's own testimony at his criminal trial, he did not comply with the terms of either the temporary restraining order or the separation agreement. On several occasions in November 1976 he lingered about the premises of his wife's new residence and attempted to discover whether she was seeing another man. These watches sometimes lasted all night and on two occasions culminated in vandalism of her residence or a car that defendant suspected belonged to Mrs. Morrison's "boyfriend." At one point defendant taped a photograph of a gravesite to his wife's front door, presumably signifying his belief that their marriage would end only in death.

On November 26, 1976, as Mrs. Morrison was boarding a commuter train to return home from work, defendant entered the train with her and sat next to her. During the ensuing conversation, in which he demanded that she accompany him to a local mental health institution, he showed her a handgun in his possession. Mrs. Morrison agreed to meet him at the institution for a counseling appointment but did not agree to go there with him.

After getting off the train at her local stop, Mrs. Morrison walked toward her car in the train station's parking lot. Before she could reach the car, defendant overtook her and demanded again that she accompany him to the mental health institution. When she refused, defendant picked her up and carried her to the car. After a struggle, during which he kicked in a window of the car, defendant managed to get in the driver's seat and hold his wife forcibly between the front seats. He then drove out of the parking lot steering with his knees while he continued to hold her.

Riding in this manner with her head held close to the floor of the car, Mrs. Morrison was constantly "kicking, screaming, and

crying," and occasionally trying to bite her way loose. Defendant, in turn, was constantly hitting her in the head with his fist to subdue her. He drove to his own house and carried her up to a bedroom. There he ripped off part of her clothing, after which she agreed to remove the rest. He then had sexual intercourse with her while she continued to resist.

After this first episode, defendant called the mental health institution and arranged for an appointment, stating that he had kidnapped his wife and had just raped her. Following this call, defendant again had forcible intercourse with Mrs. Morrison. They then traveled together to the institution and met with two counselors there. Although Mrs. Morrison asked the counselors to help her escape from defendant, they told her that there was nothing they could do and that the couple should go home.

Defendant then drove to their daughter's school to pick her up. Mrs. Morrison did not struggle during this ride, fearing that defendant would take the child away as he had done once before. Having picked up their daughter, defendant drove back to his house. He forced a third episode of sexual intercourse on his wife at this time, although she did not struggle as much as before because of the child's presence in the house. While in the house defendant again beat Mrs. Morrison and kicked her severely with his shoe.

When defendant finally released Mrs. Morrison at about 10:00 p. m., she took her daughter and went home. She attempted to call her lawyer and a female friend but could reach neither. About an hour later she called the police and reported the incident. The police conducted an investigation and took Mrs. Morrison to a hospital for an examination. She complained of numerous pains and bruises and some cuts on her face. The defendant was arrested the next morning.

Three separate indictments were returned against defendant charging him with numerous crimes, among which were assault with intent to rape, contrary to *N.J.S.A.* 2A:90–2, and rape, contrary to *N.J.S.A.* 2A:138–1. Defendant moved to have these

two counts dismissed on the ground that he was legally married to the victim at the time of the acts. The trial court denied the motion after hearing arguments. Although this ruling came after the trial court opinion in *State v. Smith*, 148 *N.J.Super.* 219 (Cty.Ct.1977), which had held that the common law exemption for marital rape prevented charging defendant in that case with the rape of his wife, the trial judge here believed that the marital circumstances were sufficiently different in this case to fall outside any supposed marital exemption.

At trial during May 1978, defendant testified on his own behalf and admitted essentially all the facts we have described. His defense of insanity was rejected by the jury. He was found guilty of rape, kidnapping, and assault and battery upon Rosita Morrison. The trial court sentenced him to four to twelve years in State prison for rape and suspended sentence on the other two charges.

The Appellate Division summarily reversed the rape conviction, relying on its earlier decision in *State v. Smith*, 169 *N.J.Super.* 98 (App.Div.1979). It affirmed defendant's conviction on the other counts. Both the State and the defendant petitioned this Court for certification. We granted the State's petition to consider whether the rape conviction should be reinstated and we denied defendant's cross-petition. 84 *N.J.* 426 (1980).

As in *State v. Smith, supra,* the issue here is not whether any marital exemption from the crime of rape existed in this State.[1] The question is whether a marital exemption, if it existed at all, would have applied to this defendant.

In *Smith* we held that the common law exemption was not an absolute rule applicable under all conditions. Because the prin-

---

[1] As we made clear in *Smith*, no marital exemption exists for sexual crimes under this State's current Criminal Code. *See N.J.S.A.* 2C:14–5(b).

ciples and justifications for the rule had been abrogated by judicial and legislative actions spanning more than a century, any rule that may have existed in the past did not survive to the time of defendant's acts and certainly would not have applied to marital circumstances where a husband and wife had separated.

In this case defendant and his wife had separated more than six months before the criminal acts. Rosita Morrison also had filed a complaint for divorce and obtained a temporary restraining order to keep defendant from "harassing, threatening or harming" or "contacting" her. Finally, defendant had executed an agreement not to molest his estranged wife. The separation by itself would make our decision in *Smith* controlling here. But these additional factors preclude any possibility that defendant might have been exempted from rape under the purported common law rule.

For all the reasons stated in *Smith* and because of the additional circumstances present in this case, we hold that defendant could properly be convicted of raping his estranged wife in November 1976.

The judgment of the Appellate Division concerning the rape conviction is reversed and the conviction reinstated.

SULLIVAN, J. (concurring in result).

I concur for the reasons given in my concurring opinion in *State v. Smith,* 85 *N.J.* 193 (1981), also decided this date.

SULLIVAN, J., concurring in the result.

For *reversal and reinstatement*—Chief Justice WILENTZ and Justices SULLIVAN, PASHMAN, CLIFFORD, SCHREIBER, HANDLER and POLLOCK—7.

For *affirmance*—None.