STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. ALBERT
SMITH, DEFENDANT-RESPONDENT.

Argued November 5, 1980—Decided February 10, 1981.

194

*Margaret Ann F. Mullins,* Assistant Essex County Prosecutor, argued the cause for appellant (*John J. Degnan,* Attorney General of New Jersey, attorney; *Donald S. Coburn,* Essex County Prosecutor, of counsel; *Andrea R. Grundfest,* Assistant Essex County Prosecutor, on the brief).

*William Welaj,* Designated Counsel, argued the cause for respondent (*Stanley C. Van Ness,* Public Defender, attorney).

*Regina C. Little* and *Phyllis Gelman* submitted a brief on behalf of *amicus curiae* National Center on Women and Family Law, Inc.

The opinion of the Court was delivered by

PASHMAN, J.

Since the enactment in New Jersey of the new Code of Criminal Justice, *N.J.S.A.* 2C:1–1 to 98–4, *L.* 1978, *c.* 95, no person can claim that a sexual assault committed after the effective date of the Code, September 1, 1979, is exempt from prosecution because the accused and victim were husband and wife. The Criminal Code expressly excludes marriage to the victim as a defense against prosecution of sexual crimes. *N.J. S.A.* 2C:14–5(b). The criminal acts alleged in this case, however, occurred before the effective date of the Code. The issue before the Court is whether a defendant can be charged with and convicted of raping his wife under the former statute, *N.J.S.A.* 2A:138–1. We hold that, at least under the circumstances of this case, he can.

I

The State alleges that on October 1, 1975, defendant Albert Smith broke into the apartment of his estranged wife, Alfreda Smith, and repeatedly beat and raped her. On that date the accused and victim were legally married. They had been married for seven years but had lived separately for approximately one year. The separation may have followed another violent incident involving defendant and his wife in September 1974. Although the record is not clear on this point, Alfreda Smith testified that she and the defendant appeared before a judge, who ordered the defendant to leave the marital home. Counsel have informed this Court that the existence of such an order cannot be verified because it would have been issued six years ago and sound recordings of oral Municipal Court orders are kept for only three years. Therefore, we must assume that no

judicial orders recognizing separation or restraining contact existed at the time of the alleged criminal acts. It also appears from the record that the parties had not entered into a formal agreement setting down the terms of their separation, nor had either filed a complaint for divorce.

At the time of the alleged incident on October 1, 1975, defendant and his wife lived in different cities. The State accuses defendant of arriving at his wife's apartment at about 2:30 a. m., breaking through two doors to get inside, and once there threatening, choking and striking her. According to the State, over a period of a few hours he repeatedly beat her, forced her to have sexual intercourse and committed various other atrocities against her person. As a result of these alleged attacks, Alfreda Smith required medical care at a hospital.

After hearing testimony on December 11, 1975, and January 5, 1976, the Essex County Grand Jury returned an indictment charging defendant with four separate counts—atrocious assault and battery, private lewdness, impairing the morals of a minor, and rape. Defendant moved to dismiss the rape charge on the ground that he was legally married to the victim at the time of the incident. The trial judge reluctantly granted the motion. He believed that the common law included a marital exemption from the crime of rape, which was implicitly incorporated into this State's statutory definition of rape from early Revolutionary times to the present. Although the trial judge expressed unequivocal disapproval of such an anachronistic rule of law, he considered it the prerogative of the Legislature to change it. *See* 148 *N.J.Super.* 219 (Law Div.1977).

The State appealed the dismissal of the rape count to the Appellate Division,[1] *R.* 2:3–1; 2:5–6(a), which affirmed the judgment of the trial court, stating:

---

[1] The ruling of the trial court did not disturb the other counts in the indictment against defendant and they are not at issue in this appeal. They remain to be tried.

> There is ample reasonable cause to believe that the common law rule excluding a husband from a statute condemning rape has heretofore obtained in New Jersey if for no other reason than because the rule did exist at common law and has not been abrogated here by legislation or judicial decision. [169 *N.J.Super.* at 101]

The appellate court did not agree with the trial judge that it was beyond a trial court's authority to change such a rule of law. *Id.* at 100. Nevertheless, it declined to make a change here because the new rule could not be applied retroactively to this defendant and the Legislature had already changed the law for future acts of marital rape by enactment of *N.J.S.A.* 2C:14–5(b) as part of the Criminal Code.

We granted the State's petition for certification, 82 *N.J.* 292 (1980), to consider the reach of our former rape statute.

## II

The rape statute under which defendant was charged provided in part:

> Any person who has carnal knowledge of a woman forcibly against her will . . . is guilty of a high misdemeanor and shall be punished by a fine of not more than $5,000, or by imprisonment for not more than 30 years, or both . . . . [*N.J. S.A.* 2A:138–1 (repealed)]

The State argues that the statute covered the conduct of a husband against his wife because it applied to "any person."

This argument, although superficially appealing, does not resolve the issue before the Court. The marital exemption, if it existed, may have acted as a defense by negating some element of the crime. Thus the statute may well have applied to "any person," but a husband's forcible sexual intercourse with his wife was not rape because it did not include all three elements of the crime—carnal knowledge, force, and lack of consent, *see State v. Heyer*, 89 *N.J.L.* 187 (E & A 1916). Similarly, the reference to "any person" could be construed not to include infants; insane persons, who lack the necessary state of mind to form an intent to rape; or women, at least as the principal actor. Thus, our inquiry must go beyond the "plain meaning" of the statute, the language of which alone does not reveal whether a husband was exempt from the charge of raping his wife.

Defendant, by contrast, contends that a marital exemption had always been part of this State's criminal law of rape until enactment of the new Criminal Code. Yet he is unable to cite any statutory or judicial authority from this State to support his position. In fact, prior to the decisions of the courts below, the only case in New Jersey that considered whether a marital exemption from rape existed under *N.J.S.A.* 2A:138–1 expressly declined to decide the issue. *In re Faas*, 42 *N.J.Super.* 31, 37 (App.Div.1956), *cert.* denied, 353 *U.S.* 940, 77 *S.Ct.* 820, 1 *L.Ed.*2d 762 (1957). Nevertheless, defendant contends that the exemption was a rule of English common law which was incorporated into New Jersey's first rape statute in 1796 and remained unchanged throughout the time that *N.J.S.A.* 2A:138–1 was in effect.

■ The first State Constitution of New Jersey provided for a limited incorporation of English common and statutory law in existence at that time by providing:

> That the common law of England, as well as so much of the statute law, as have been heretofore practiced in this colony, shall still remain in force, until they shall be altered by a future law of the legislature; such parts only as are repugnant to the rights and privileges contained in this charter.... [*N.J.Const.* (1776), Art. XXII]

Thus, English common law as of 1776 became part of this State's law after the Revolution subject to change by the Legislature or except where in conflict with the State Constitution.[2] The 1844 Constitution likewise kept in force laws then in effect. *N.J. Const.* (1844), Art. X, § 1. Finally, our current State Constitution states:

> All law, statutory and otherwise, all rules and regulations of administrative bodies and all rules of courts in force at the time this Constitution or any Article thereof takes effect shall remain in full force until they expire or are superseded, altered or repealed by this Constitution or otherwise. [*N.J.Const.* (1947), Art. XI, § 1, par. 3]

---

[2] The State does not contend that a marital exemption would have violated the 1776 Constitution.

See also *Collopy v. Newark Eye and Ear Infirmary,* 27 *N.J.* 29, 48–49 (1958) (Heher, J., dissenting). The result of these successive constitutional provisions is that certain centuries-old rules of law may still be the law in this State. The question in this case is whether a marital exemption from rape was, at the time of defendant's conduct, one such rule. To answer that question, we must first consider whether there actually existed a marital exemption rule under pre-Revolutionary common law.

## A

Sir Matthew Hale, a seventeenth century English jurist, wrote a treatise on English law which is invariably cited as authority for the rule. Hale discussed the crime of rape and possible defenses, stating:

> But the husband cannot be guilty of a rape committed by himself upon his lawful wife, for by their mutual matrimonial consent and contract the wife hath given up herself in this kind unto her husband, which she cannot retract. [1 Hale, *History of the Pleas of the Crown* *629]

Hale cited no authority for this proposition and we have found none in earlier writers. Thus the marital exemption rule expressly adopted by many of our sister states has its source in a bare, extra-judicial declaration made some 300 years ago. Such a declaration cannot itself be considered a definitive and binding statement of the common law, although legal commentators have often restated the rule since the time of Hale without evaluating its merits, *see, e. g.,* 3 *Wharton's Criminal Law* § 286 (14th ed. 1980); 2 W. Burdick, *The Law of Crimes* § 476 at 223 (1946); 2 F. Schlosser, *Criminal Laws of New Jersey* § 88:8 (3d ed. 1970); Annot., 84 *A.L.R.2d* 1017, 1019–22 (1962); 65 *Am.Jur.* 2d, *Rape* § 39 at 782–83 (1972); 75 *C.J.S., Rape* § 6 at 467 (1952).

■ The common law which was adopted as the law of this State in 1776 consisted of the underlying reasons and policies that justified particular rules of law as well as the legal rules themselves. "It is the principles of the common law which [this State has] adopted generally, and not necessarily the decisions of the English courts in exposition of the common law." *Heise v. Earle,* 134 *N.J.Eq.* 393, 402 (E & A 1944). English judicial

opinions are only "evidence of what is common law." *Id.* Therefore, it is even clearer that extra-judicial discussions should not always be considered accurate expositions of the common law. In the absence of case law in this State or in England before the Revolution, we are more wary than the lower courts here of accepting Hale's rule as part of the common law.

We need not decide, however, the broad question of whether a marital exemption existed under English common law. The narrower question here is whether such a marital exemption, even if it existed, would have applied inflexibly for as long as a marriage continued to exist in the legal sense. We think not.

We believe that Hale's statements concerning the common law of spousal rape derived from the nature of marriage at a particular time in history. Hale stated the rule in terms of an implied matrimonial consent to intercourse which the wife could not retract. This reasoning may have been persuasive during Hale's time, when marriages were effectively permanent, ending only by death or an act of Parliament. *See* H. Clark, *Law of Domestic Relations* 280–82 (1968). Since the matrimonial vow itself was not retractable, Hale may have believed that neither was the implied consent to conjugal rights. Consequently, he stated the rule in absolute terms, as if it were applicable without exception to all marriage relationships. In the years since Hale's formulation of the rule, attitudes towards the permanency of marriage have changed and divorce has become far easier to obtain. The rule, formulated under vastly different conditions, need not prevail when those conditions have changed.

Even in pre-Revolutionary England, matrimonial law permitted a wife to live apart from her husband. Judicial separation, sometimes called divorce *a mensa et thoro,* was available, H. Clark, *supra,* at 281, and courts would also enforce mutual separation agreements. In *Rex v. Lister,* 1 *Strange* 477, 93 *Eng.Rep.* 645 (1721), the court released a wife from confinement by her husband after he had forcibly seized her and carried her away during a time when they were living separately

pursuant to a mutual agreement. The court held that only "where the wife will make an undue use of her liberty, either by squandering away the husband's estate, or going into lewd company; it is lawful for the husband, in order to preserve his honour and estate, to lay such a wife under a restraint." 93 *Eng.Rep.* at 646.[3] If a wife had a right to live separately from her husband, it follows that she also had a right to refuse sexual intercourse with him at least while they were separated. Therefore, it would appear that Hale's rule was subject to an exception even in pre-Revolutionary England.

■ To summarize our view of the marital exemption under English common law, we think that the existence of the rule is

---

[3]Many years later, another English court reached a similar result in *Regina v. Jackson*, 1 *Q.B.* 671 (1891), although other case authority suggested that a husband could confine his wife as long as they were married, *In re Cochrane*, 8 *Dowl.* 630 (1840) (cited in *Regina v. Jackson, supra* ); *Atwood v. Atwood*, 24 *Eng.Rep.* 220 (1718). These cases indicate that the common law concerning the individual liberty of married women, or their right to control their own lives even while still legally married, was not as settled as Hale's rule might suggest.

In fact, English courts after the American Revolution cast some doubt on the absolute validity of Hale's rule. In *Regina v. Clarence*, 22 *Q.B.D.* 23 (1888), one dissenting justice wrote:

> The authority of Hale, C. J., on such a matter is undoubtedly as high as any can be, but no other authority is cited by him for this proposition, and I should hesitate before I adopted it. There may, I think, be many cases in which a wife may lawfully refuse intercourse, and in which, if the husband imposed it by violence, he might be held guilty of a crime. [*Id.* at 57 (Field, J.)]

Another justice in the majority seemed to agree: "unless, indeed, as between married persons rape is impossible, a proposition to which I certainly am not prepared to assent, and for which there seems to me to be no sufficient authority." *Id.* at 33 (Wills, J.). But the marital exemption rule was not squarely in issue until *Rex v. Clarke*, [1949] 2 *All E.R.* 448 and *Regina v. Miller*, [1954] 2 *All E.R.* 529. In those cases the courts adopted Hale's rule, but not for all situations when the parties were still legally married. They would not have applied the marital exemption where the parties had separated pursuant to a judicial order or written agreement. These two cases indicate that Hale's rule (even if it existed) was not applicable to all marriage situations even though the defendant could claim that his marriage to the victim was not officially at an end.

not as obvious as the lower courts here or courts in other jurisdictions have believed. The rule may simply not have been applicable to revocable marriages, which exist today as a result of changes in divorce laws. The fact that many jurisdictions have mechanically applied the rule, without evaluating its merits under changed conditions, does not mean that such blind application was part of the "principles of the common law" adopted in this State. Without deciding whether an exemption existed in any situations at all, we think that it was not meant to exist during the entire legal duration of a marriage. Therefore, we decline to apply mechanically a rule whose existence is in some doubt and which may never have been intended to apply to the factual situation presented by this case.

### B

Having determined that the common law did not include an absolute marital exemption from prosecution for rape under all conditions, we next consider what rule of exemption, if any, did exist as the law in this State at the time of these alleged criminal acts.

■ The inquiry must begin with enactment of the State's first rape statute in 1796. That statute provided in part:

> That any person who shall have carnal knowledge of a woman, forcibly and against her will, ... shall, on conviction, be adjudged guilty of a high misdemeanor.... [*L.* 1796, An Act for the Punishment of Crimes, § 8]

This statutory language is almost identical to *N.J.S.A.* 2A:138–1, the applicable statute in this case. *See supra* at 198. The definition of forcible rape seems to have come directly from Blackstone's eighteenth century definition. *See* 4 Blackstone, *Commentaries* \*210 ("*rape, raptus mulierum,* or the carnal knowledge of a woman forcibly and against her will"). Although discussing other statements by Hale, Blackstone never mentions a marital exemption. *See id.* at \*213. Thus, we do not know whether the 1796 Legislature intended to incorporate implicitly any form of a marital exemption within the statutory definition of rape. However, we need not answer that question

for the purposes of this case. Our concern here is whether a marital exemption, even if it existed in this State, covered defendant's conduct.

We have previously concluded that the common law spousal exemption was not absolute or mechanically applicable to all legal marriages. We have also concluded that the enactment of a rape statute in this State did not clarify the existence or extent of such a rule. Nevertheless, we will assume for the purpose of our inquiry that some form of a marital exemption did exist in eighteenth century New Jersey and next consider whether that exemption was the rule in 1975, when defendant allegedly raped his wife.

■ A common law rule of marital exemption was probably based on three major justifications, which might have constituted the common law principles adopted in this State.[4] The first of these, the notion that a woman was the property of her husband or father, *see* S. Brownmiller, *Against Our Will* 18–28 (1975), was never valid in this country. Rape laws may originally have protected a woman's chastity and therefore her value to her father or husband. In this State, however, rape statutes have always aimed to protect the safety and personal liberty of women. Thus, the common law "principle" that a wife is her husband's chattel does not support the view that our rape statute included a marital exemption.

Second, the common law once included the concept that a husband and wife were one person, that after marriage a man and woman no longer retained separate legal existence. As a result of this concept, some have argued that a husband could not be convicted of, in effect, raping himself. This argument does not take into account how, in spite of marital unity, a

---

[4]These are not the only justifications advanced by those favoring retention of marital exemption. Others, such as evidentiary problems, prospects of reconciliation, and availability of other criminal sanctions are discussed in Note, *The Marital Rape Exemption*, 52 *N.Y.U.L.Rev.* 306, 313–16 (1977).

husband could always be convicted of other crimes upon his wife, such as assault and battery. *See* 6 *Am.Jur.*2d, *Assault and Battery* § 44 (1963), and cases therein.

Furthermore, even if the argument had validity at one time, the "principle" of marital unity was discarded in this State long before the commission of defendant's alleged crime. *See N.J. S.A.* 37:2–1 to –30 (Married Woman's Acts, enacted in the nineteenth and early twentieth centuries, giving married women rights to sue and be sued, own property, and enter contracts separately from their husbands); *Immer v. Risko,* 56 *N.J.* 482 (1970) (abolition of spousal tort immunity); *King v. Greene,* 30 *N.J.* 395 (1959) (alienability of wife's interest in property held in tenancy by the entirety); *In re Lawrence,* 133 *N.J.Super.* 408 (App.Div.1975) (wife not compelled to assume husband's surname); *State v. Pittman,* 124 *N.J.Super.* 334 (Law Div.1973) (indictment of husband and wife for conspiracy). If the concept of marital unity was the basis for the marital exemption, the statutes and cases cited above, all part of our laws before October 1975, changed the common law and eliminated this basis for the exemption.

The third and most prevalent justification for the exemption rule is the one utilized by Hale himself—that upon entering the marriage contract a wife consents to sexual intercourse with her husband. This irrevocable consent negates the third essential element of the crime of rape, lack of consent, *see State v. Heyer, supra.* We cannot say with certainty whether such a rationale was justified even in the seventeenth century. *See supra* at 201–202.

More importantly, this implied consent rationale, besides being offensive to our valued ideals of personal liberty, is not sound where the marriage itself is not irrevocable. If a wife can exercise a legal right to separate from her husband and eventually terminate the marriage "contract," may she not also revoke a "term" of that contract, namely, consent to intercourse? Just as a husband has no right to imprison his wife because of her

marriage vow to him, *Rex v. Lister, supra,* he has no right to force sexual relations upon her against her will. If her repeated refusals are a "breach" of the marriage "contract," his remedy is in a matrimonial court, not in violent or forceful self-help.

Changes in divorce laws have significantly affected judicial and legislative construction of marital exemption rules. Some jurisdictions have recognized that consent to intercourse does not automatically continue until a marriage is officially at an end. They have refused to exempt husbands from the charge of rape where a judicial decree of separation has been entered, where a spouse has filed for divorce or separate maintenance, or where the spouses are simply living apart. 3 *Wharton's Criminal Law* § 286 at 26–27 (14th ed. 1980); Note, *The Marital Rape Exemption,* 52 *N.Y.U.L.Rev.* 306, 318–19 (1977). *See also Regina v. Miller,* [1954] 2 *All E. R.* 529; *Rex v. Clarke,* [1949] 2 *All E.R.* 448.

■ Since the common law exemption supposedly operated by negating an essential element of the crime—lack of consent—it could not be applied where marital consent to sexual intercourse could be legally revoked. By 1975 our matrimonial laws recognized the right of a wife to withdraw consent prior to the dissolution of a marriage and even prior to a formal judicial order of separation.

This conclusion is consistent with those cases or statutes which have refused to apply the exemption rule after a judicial decree of separation has been issued. Such cases have reasoned that a legal process which originally created the marital state has stepped in to terminate it. *Rex v. Clarke, supra.* But the wife could not rely on her unilateral decision outside the legal process to mark the end of the marriage, for unless she could allege and prove proper grounds, a court would probably decline to terminate the marriage. *Regina v. Miller, supra.* The legal setting in this State is different. Since the advent of the no-fault ground for divorce, *see N.J.S.A.* 2A:34–2(d), any spouse may make a unilateral decision to end the marriage. By separating

from her husband and living apart for 18 months, a wife is entitled to a divorce without further proof of proper grounds. The corollary of this right is that a wife can refuse sexual intercourse with her husband during the period of separation.[5] If a wife has a right to refuse intercourse, or deny consent, then a husband's forceful carnal knowledge of his wife clearly includes all three essential elements of the crime of rape. He cannot defend by asserting that there was no lack of consent because he was still legally married to the victim.

Our no-fault divorce law has existed since 1971, several years before the parties here separated and before the alleged acts of defendant. Defendant cannot claim that in 1975 his wife consented to have sexual intercourse with him although they were living separately. Whether or not any other husband could have based a defense on such implied consent—a proposition that we doubt seriously but do not decide—this husband could not.

■ With none of the three major common law justifications viable under our laws at the time of defendant's conduct, it would be irrational to believe that a common law marital exemption for rape endured in this State while other laws had changed so dramatically. The "principles of the common law" incorporated into our laws by our successive Constitutions, see supra at 199, and supposedly justifying a marital exemption had been abrogated by subsequent legislative and judicial actions. With their demise, no justification remained at this late date for believing that a rigid marital exemption rule based on those principles would be retained. Therefore, we hold that this State did not have a marital exemption rule for rape in 1975 that would have applied to this defendant and prevented his indictment and conviction on the charge of raping his wife.

---

[5]In fact, the absence of sexual intercourse during the 18-month separation is often an element of proof of the no-fault ground. See, e. g., Ellam v. Ellam, 132 N.J.Super. 358 (Ch.Div.1975); Antonucci v. Antonucci, 124 N.J.Super. 544 (Ch.Div.1973).

## III

In the criminal context, the Due Process Clause of the Fourteenth Amendment requires that an accused have had fair warning at the time of his alleged crime that his conduct might be proscribed by a particular statute. *Bouie v. Columbia*, 378 *U.S.* 347, 351, 84 *S.Ct.* 1697, 1701, 12 *L.Ed.*2d 894, 898 (1964); *United States v. Harriss*, 347 *U.S.* 612, 617, 74 *S.Ct.* 808, 811, 98 *L.Ed.* 989, 996 (1954). Defendant contends, and the Appellate Division agreed, 169 *N.J.Super.* at 101, that any change in this State's rule of marital exemption for rape could not be applied retroactively to him consistently with due process.

This due process argument assumes that at the time of defendant's acts the law of this State would have exempted him from prosecution for rape. We have held, however, that no rule of law would have exempted this defendant from the charge of raping his estranged wife. Our holding does not deprive defendant "of any defense available according to law at the time when the act was committed," *Beazell v. Ohio*, 269 *U.S.* 167, 169, 46 *S.Ct.* 68, 68, 70 *L.Ed.* 216, 217 (1925). At least under the circumstances of this case, the defense was not available when defendant committed the acts.

We have not changed a common law rule clearly in existence at the time of defendant's acts. *Cf. State v. Young*, 77 *N.J.* 245 (1978) (common law year-and-a-day rule of criminal liability for murder); *State v. Koonce*, 89 *N.J.Super.* 169 (App.Div.1965) (common law right to resist illegal arrest). Instead, our decision today is a first judicial application of a rule. In this sense our decision is akin to cases where a criminal offense depends on changes in a different body of law. *E. g., People v. Morton*, 308 *N.Y.* 96, 123 *N.E.*2d 790 (1954) (husband could be convicted of stealing money from his wife because Married Woman's Acts allowing wives to own property separately from their husbands had abrogated exemption under common law larceny of husband taking wife's property); *Stewart v. Commonwealth*, 219 *Va.* 887, 252 *S.E.*2d 329 (1979).

· Although no court in this State prior to 1975 had held that a husband could be liable for the rape of his wife under *N.J.S.A.* 2A:138–1, our holding does not present a due process problem because our interpretation of the statute is not unexpected. *Rose v. Locke,* 423 *U.S.* 48, 96 *S.Ct.* 243, 46 *L.Ed.*2d 185 (1975); *United States v. Dege,* 364 *U.S.* 51, 80 *S.Ct.* 1589, 4 *L.Ed.*2d 1563 (1960). In *Rose,* the Supreme Court upheld a conviction which for the first time in that jurisdiction applied a statute proscribing "crimes against nature" to acts of non-consensual cunnilingus. No cases had previously excluded such acts from the reach of the statute; the conviction was a first judicial application of a rule based on an interpretation of a statute which was not unexpected. In *Dege,* the Court interpreted the federal conspiracy statute enacted in 1948 to include conspiracy by married couples. The Court rejected common law notions of marital unity as making conspiracy by husband and wife impossible and refused to attribute to Congress an intent to preserve in the statute principles that were no longer viable at the time of its enactment. More importantly, this "new" rule of husband and wife liability was applicable to defendants in that case. This result suggests that there is no violation of due process when a court merely applies for the first time a rule which has developed under existing principles and laws, instead of changing a previously stated rule that clearly applied to defendant's acts at the time of their commission.

The Supreme Court's decision in *Bouie v. Columbia, supra,* is distinguishable on another ground. In *Bouie,* the Court held that "an unforeseeable judicial enlargement of a criminal statute, applied retroactively," violates due process. 378 *U.S.* at 353, 84 *S.Ct.* at 1702. The judicial construction in that case had "unexpectedly broaden[ed] a statute which on its face had been definite and precise," *id.,* and had not previously covered defendants' conduct. The rape statute under consideration in this case was also facially clear but, unlike the statute in *Bouie,* seemed to cover defendant's acts against his wife. There was no surprise or absence of fair warning to defendant because a criminal

statute seemingly inapplicable had suddenly been expanded to encompass his conduct. Although we said earlier in this opinion that we must look beyond the "plain meaning" of *N.J.S.A.* 2A:138–1 to determine whether a husband can be convicted of raping his wife, the "plain meaning" as well as the changes in our common law and the enactment of statutes, *see supra* at 205–207, was nevertheless sufficient to give a defendant notice that his conduct was proscribed by the criminal statute.

Finally, in a more general sense, defendant had ample notice and fair warning that the people of this State would no longer tolerate a husband's violent sexual assault of his wife. The personal liberty of women and the recognition of them as independent citizens under the law had developed beyond question through legislative and judicial actions over more than a century. The right of women to make their own choices regarding reproduction and sexual conduct was also apparent under the abortion and contraception cases. *Roe v. Wade*, 410 *U.S.* 113, 93 *S.Ct.* 705, 35 *L.Ed.2d* 147 (1973); *Doe v. Bolton*, 410 *U.S.* 179, 93 *S.Ct.* 739, 35 *L.Ed.2d* 201 (1973); *Ponter v. Ponter*, 135 *N.J.Super.* 50 (Ch.Div.1975). No person in this State in 1975 could justifiably claim that a man had a legal right to impose his sexual will forcefully and violently on a woman, even if it was his wife, over her unmistakable objection.

We hold that defendant had fair warning that his conduct might lead to conviction for rape, and that his conviction under *N.J.S.A.* 2A:138–1 would not deprive him of due process.

## Conclusion

The enactment of the new Criminal Code has made it unnecessary for this Court to discuss at length all the inequities of a medieval rule that denies some women protection against sexual attack and treats them as sexual property of their husbands. Under *N.J.S.A.* 2C:14–5(b) married men or women, whether living with or separately from their spouses, will not be able to force their sexual wills upon their spouses without incurring the severe penalties attached to our laws proscribing sexual assault.

But neither was the law of this State under the former rape statute as blind to personal liberty and privacy as defendant would have this Court believe. A man separated from his wife—and perhaps one not separated—could not invoke an outdated and doubtful rule to avoid prosecution for rape simply because he was still legally married to his victim.

The judgment of the Appellate Division is reversed and the rape count of the indictment against defendant is reinstated.

SULLIVAN, J. (concurring in result).

Whatever may have been the common law rule in seventeenth century England in the time of Sir Matthew Hale, it never was the law of this State that there was a marital exemption from the law of rape and that a husband could not be guilty of the rape of his wife.

Rape is and has always been a statutory crime in the State of New Jersey. Over the years, the statutory language remained virtually unchanged. At the time of the offense in question it provided: "Any person who has carnal knowledge of a woman forcibly against her will ... is guilty of a high misdemeanor." *N.J.S.A.* 2A:138–1 (repealed).

The statute has never contained any exception or exemption. I would construe it to mean exactly what it says and would hold that a husband who had carnal knowledge of his wife forcibly and against her will was guilty of rape.

I, therefore, concur in the result reached by the majority but for the reasons heretofore stated.

SULLIVAN, J., concurring in the result.

*For reversal and reinstatement*—Chief Justice WILENTZ and Justices SULLIVAN, PASHMAN, CLIFFORD, SCHREIBER, HANDLER and POLLOCK—7.

*For affirmance*—None.