GRIMES, Judge.
The state charged appellant with attempted first degree murder, and a jury convicted him of the lesser included offense of aggravated battery. On this appeal he contends that a certain statement made by the court constituted an improper comment upon his failure to testify. He also argues that the court erred in refusing to instruct the jury on aggravated assault.
In the course of asking a prospective jur- or whether he could make a decision on the question of intent, the prosecutor pointed out that intent exists inside a person’s head and that since a jury cannot “actually get into someone’s skull, that we have to, in determining what someone’s intent was, we have to rely on the circumstances, ...” Shortly thereafter the prosecutor addressed another juror as follows: “I trust you heard the question I asked Mr. Morrison about intent and recognizing that none of us are going to be able to get into that man’s head today?” Defense counsel interrupted with an objection and, out of the presence of the jury, made a motion for a new jury'venire. After hearing argument of counsel, the court denied the motion.
Sometime later, after the prosecutor had finished his opening statement, the following events transpired:
THE COURT: Mr. Hoogewind, does the defendant desire to make a statement at this time or to reserve it?
MR. HOOGEWIND: Your Honor, may we approach the bench?
THE COURT: Yes, sir.
(Thereupon, the following proceedings were had at the bench:)
MR. HOOGEWIND: Your Honor, I am sure it was unintentional by the Court, but I will have to ask for a mistrial at this time based upon what Your Honor just said.
Your Honor said: Would the defendant wish to make a statement at this time. I don’t know how to answer that. I know Your Honor didn’t mean it. It happened nonetheless. I don’t know how to answer that. If I say, no, I don’t know what the jury is going to think. We can have it read back, but that is what Your Honor said.
I know it was a mistake, but it happened, and I don’t know how to respond to it in the presence of the jury.
THE COURT: Well, Mr. Hoogewind, your motion is denied.
(Thereupon, the following proceedings were had in open court:)
THE COURT: Do you wish to make a statement at this time?
MR. HOOGEWIND: No, Your Honor.
THE COURT: Do you wish to reserve it?
MR. HOOGEWIND: Yes.
Appellant argues that the court’s inquiry as to whether the defendant wished to make a statement, particularly coming as it did after the prosecutor’s comment about getting into the defendant’s head, had the *750 inadvertent effect of being an improper comment upon appellant’s constitutional right to refuse to testify. The state responds by pointing out that the court had earlier advised the jury that both lawyers would have the right to make opening statements which the jury was not to consider as evidence. Thus, the state says, it was obvious to everyone that the court’s question was addressed to the defendant’s representative in court, his attorney. We agree with the state. Admittedly it would have been more prudent for the court to ask if “defense counsel” wished to make a statement. Yet, when considered in light of the fact that the court had previously told the jury that both attorneys would be permitted to make an opening statement, appellant’s argument loses much of its force. The common sense interpretation of the judge’s statement indicates that he was referring only to the defendant’s lawyer. This is buttressed by the court’s later question, addressed directly to defense counsel, concerning whether he wished to make a statement at that time. Viewed in this context, the court’s inquiry was not reasonably susceptible of being interpreted by the jury as referring to appellant’s failure to testify. See David v. State, 369 So.2d 943 (Fla.1979). The much earlier dispute over the prosecutor’s remark about getting into the defendant’s head was so unrelated to the judge’s comment as to be irrelevant.
Appellant also contends that the court’s failure to give his requested instruction on aggravated assault constituted reversible error. The information under which the state tried appellant read as follows:
Tommy H. Dunn ... did unlawfully and from a premeditated design to effect the death of Alice Dunn, a human being, actually and intentionally or knowingly cause great bodily harm, permanent disability or permanent disfigurement, by stabbing the said Alice Dunn, by the use of a deadly weapon, to wit: a knife, intending thereby to cause the death of the said Alice Dunn.
The evidence reflected that Alice Dunn, appellant’s wife, was preparing dinner for her family and a friend, Bill Deaton. Before dinner, she got into an argument with Mr. Deaton and asked him to leave. Appellant objected, and he and his wife then argued over Deaton’s presence. Finally, Deaton was permitted to stay and Mrs. Dunn served dinner. After dinner, Deaton left, and appellant fell asleep. He awoke about two hours later. Observing that the leftovers from his dinner were cold, he asked his wife to reheat them. She told him that he should have finished his food earlier, but, nevertheless, she began to comply with his request.
According to Mrs. Dunn, while she was reheating the food, appellant complained that he was very hungry. She told him that the food was on the stove and that if he wanted it faster, he could argue with the stove. While this exchange was occurring, appellant was sitting on the edge of a bed in front of the dinner table upon which there was silverware. When Mrs. Dunn next saw her husband, he was standing, holding a knife in his hand. Their daughter, Terry, asked him why he had the knife, and he responded, “What knife?” About ten minutes later Mrs. Dunn decided to check on whether the food was completely cooked. She said that as she walked past appellant, who was then standing, he suddenly stabbed her with the knife.
After the stabbing, appellant picked up his wife and tried to attend to her wound. When police arrived, he urged them to obtain immediate medical attention for her and said that he had stabbed her by accident. He later made a statement to the police that, as he was sitting at the foot of a bed eating dinner, he made a “backward motion” with his hand while holding a steak knife and accidentally struck his wife in the chest. A policeman testified that after Mrs. Dunn was taken to the hospital, she told him that the stabbing took place while appellant was sitting on the bed.
Appellant did not testify.
Appellant is correct that if aggravated assault is a lesser included offense of the crime charged in the information, the court committed reversible error by failing to give his requested instruction. Lomax v. State, 345 So.2d 719 (Fla.1977). Clearly, aggravated assault is not a category (3) *751 necessarily lesser included offense because not all of its elements are elements of the greater offense of attempted murder. Brown v. State, 206 So.2d 377 (Fla.1968). The question remains, however, as to whether the wording of the information and the evidence in the case were such that it could be considered a category (4) lesser included offense under Brown.
Appellant relies primarily upon Kimbrough v. State, 356 So.2d 1294 (Fla. 4th DCA 1978), in which the court reversed the defendant’s conviction of attempted murder in the second degree on a charge of attempted first degree murder with a firearm for the failure of the trial judge to give requested instructions on aggravated assault and simple assault. The information alleged that the defendant had attempted to unlawfully kill a human being and did shoot him with a firearm. The state argued that because the victim never saw the gun before he was shot, he was not placed in fear of imminent violence which is an essential element of assault.[1] The court held that this ignored the fact that five other shots were fired at the victim and that it was reasonable to believe that the victim was placed in fear between the first shot and the subsequent shots.
Appellant’s reliance on Kimb--rough is misplaced. Admittedly, it is not always necessary for the victim to testify that he was afraid in order to sustain a conviction of assault. However, in this record until the moment of her injury, there is no evidence from which it could be inferred that Mrs. Dunn was ever placed in fear. She had no prior warning that appellant would stab her. The minor arguments which occurred earlier in the evening gave her no apprehension of being attacked. The fact that she saw appellant with a knife before the stabbing was of no consequence because he was preparing to use the knife to eat his supper. Finally, the dispute over whether appellant was standing or sitting at the time of the attack was irrelevant to the issue of placing his wife in fear. Since the facts were not susceptible of an interpretation that the victim had a well-founded fear of imminent violence, there could have been no conviction for aggravated assault.[2] See State v. White, 324 So.2d 630 (Fla.1975). Hence, the court correctly refused to charge the jury on this crime.
AFFIRMED.
SCHEB, C. J., and BOARDMAN, J., concur.

. Section 784.011, Florida Statutes (1979), defines assault to include the “doing of some act which creates a wellfounded fear in such other persons that ... violence is imminent.” Section 784.021, Florida Statutes (1979), specifies that aggravated assault consists of assault plus the enumerated aggravating circumstances.

. Because the facts of this case are different from Kimbrough, we need not pass on whether we agree with our sister court that an information which merely recites an attempted murder by way of a shooting sufficiently alleges the element of well-founded fear for purposes of charging a lesser included offense of aggravated assault. Cf. State v. Dye, 346 So.2d 538 (Fla.1977), in which the supreme court held that no essential elements of a crime should be left to inference in an information.