401 So.2d 1126 (1981)
STATE of Florida, Appellant,
v.
Larry SMITH, Appellee.
No. 80-878.
District Court of Appeal of Florida, Fifth District.
July 1, 1981.
Rehearing Denied July 30, 1981.
Jim Smith, Atty. Gen., Tallahassee, and Barbara Ann Butler, Asst. Atty. Gen., Daytona Beach, for appellant.
*1127 Margene Roper, Port Orange and J. Russell Hornsby of Law Offices of J. Russell Hornsby, P.A., Orlando, for appellee.
Phyllis Gelman and Joanne Schulman of the National Center on Women and Family Law, Inc., New York City, Deborah A. Sammons and Treena Kaye of Central Florida Legal Services, Inc., Sanford, for amici curiae.
FRANK D. UPCHURCH, Jr., Judge.
The state appeals from an order dismissing a count of sexual battery against appellee. The charge arose from an incident which involved appellee and his wife, the latter being the victim of the battery.
Appellee and his wife were married in 1975 and separated in 1979. On November 29, 1979, Mrs. Smith filed for divorce and on December 6, 1979, she obtained a temporary restraining order enjoining the parties from molesting, harassing or interfering with one another.
Mrs. Smith accused appellee of confronting her in the parking area of her apartment complex on the evening of January 22, 1980. She alleges that he grabbed her and ordered her to come with him. She then sprayed him with a mace-type product. Appellee knocked her down and took the mace from her. He then dragged her into his car and drove off. As appellee drove he ordered his wife to undress threatening to squirt her in the eyes and nose with the mace and to beat her. She undressed and was forced to submit to sexual intercourse on two separate occasions during the trip.
Mrs. Smith, upon gaining her freedom, charged appellee with kidnaping and sexual battery. Appellee moved to dismiss the sexual battery count on the ground that at the time of the offense he and the complaining witness were husband and wife. The court granted the motion.
The question presented is whether there is a common law interspousal exception applicable to section 794.011(5), Florida Statutes (1979), thereby precluding criminal prosecution of a husband who commits sexual battery upon his wife. We hold there is no such exception and REVERSE.
Appellee contends that a marital exception has historically been a part of the state's criminal law of rape[1] and that along with the crime of rape it was incorporated into the sexual battery statute enacted in 1975. The state, however, contends that the sexual battery statute is broader than the prior law in the acts it defines[2] and the actors who fall within its operation,[3] and that the statute, silent as to its applicability to the marital relationship, proscribes the forcible and non-consensual sexual battery of any person, male or female, by any other.
The exception argued by appellee does not affect the definition of the crime but rather challenges the existence of an element of that crime, lack of consent. In other words, the statute may apply to any person but the husband's forcible sexual intercourse with his wife would not constitute a violation thereof because an element of the crime, lack of consent, could not be established.
The present statute prohibits nonconsensual sexual conduct between persons of the same or different sex. Thus the offense can be committed by man against man, woman against woman, man against woman, and woman against man.
*1128 An excellent review of the history of the common law exception is contained in State v. Smith, 85 N.J. 193, 426 A.2d 38 (1981), which is factually similar to the case before us.[4] The principle was derived from Sir Matthew Hale, a seventeenth century English jurist who declared in a treatise:
But the husband cannot be guilty of a rape committed by himself upon his lawful wife, for by their mutual matrimonial consent and contract the wife hath given up herself in this kind unto her husband which she cannot retract.
1 Hale, History of the Pleas of the Crown 629.
Despite doubts raised in Smith about the basis for this statement,[5] numerous American jurisdictions held that a husband could not be prosecuted for the forcible rape of his wife. See, e.g., Commonwealth v. Fogerty, 74 Mass. (8 Gray) 489 (1857); People v. Pizzura, 211 Mich. 71, 178 N.W. 235 (1931); Frazier v. State, 48 Tex.Cr. 142, 86 S.W. 754 (1905). See generally 3 Wharton's Criminal Law § 286 at 25 (14th ed. 1980).
The Smith court, however, noted that Hale's implied matrimonial consent theory was formulated under vastly different conditions, when the matrimonial vow and hence concomitantly implied consent to conjugal rights were not retractable. However, concepts of marriage and divorce have clearly evolved and in Smith the court declared:
The rule may simply not have been applicable to revocable marriages, which exist today as a result of changes in divorce laws. The fact that many jurisdictions have mechanically applied the rule, without evaluating its merits under changed conditions, does not mean that such blind application was part of the `principles of the common law' adopted in this State. Without deciding whether an exemption existed in any situations at all, we think that it was not meant to exist during the entire legal duration of a marriage. Therefore, we decline to apply mechanically a rule whose existence is in some doubt and which may never have been intended to apply to the factual situation presented by this case.
426 A.2d at 38.
The court, after concluding that the common law did not include an absolute marital exemption, proceeded to determine whether the exemption existed in 1975, at the time of the defendant's conduct.
The Smith court noted that three basic common law principles were relied upon to justify the exemption. First was the ancient concept of the wife as a chattel of her husband or father, see Commonwealth v. Chretien, 417 N.E.2d 1203 (Mass. 1981), a theory which was never accepted in this country. Smith at 44. Indeed, this concept has no value in Florida under the sexual battery statute since the purpose of that statute is to protect both males and females from sexual violence, i.e., a crime of violence and not a crime of sex. See State v. Aiken, 370 So.2d 1184 (Fla. 4th DCA 1979) (Dauksch, J., concurring), aff'd, 390 So.2d 1186 (Fla. 1980).
The second underlying principle is the common law concept that husband and wife were one person and after marriage no longer retained separate legal existence. However, this concept of unity of husband and wife has been abrogated in most states and, in fact, no longer obtains in Florida. See Gaston v. Pittman, 224 So.2d 326 (Fla. 1969); State v. Herndon, 158 Fla. 115, 27 So.2d 833 (1946).
*1129 The third principle, and the one utilized by Hale, is that upon entering the marriage contract a wife consents to sexual intercourse with her husband. This consent the theory goes, is irrevocable and thereby negates the third element of the crime of rape, lack of consent.
Even if we assume that marriage carries with it the implied consent to forcible sexual intercourse, it should not follow that consent can never be withdrawn so long as the marriage, in its technical sense, exists. In the factual circumstances presented, the wife clearly had withdrawn any implied consent by filing suit for dissolution of the marriage and the court, by entry of its restraining order, approved the limitation of contact between the parties. However, to rest the decision on this factor alone would require an assumption that the common law exception still exists. We reject such a contention.
While anatomical differences between the sexes limit the manner in which the offense of sexual battery can be perpetrated, it nonetheless follows that if there is an implied consent by a woman to such conduct by her husband there has to be an implied consent to similar conduct by the husband. In Hale's time, a man could not be the victim of rape, but under section 794,011, Florida Statutes, he can be. It is inconceivable that a husband would accept the argument that by marriage he consented to the conduct defined in the statute if inflicted upon him by force or violence.
We hold that the fact of marriage carries with it no implied consent to sexual battery as defined under section 794.011, Florida Statutes. The statute proscribes a crime of violence, not a crime of sex. State v. Aiken.
Appellee warns that the spousal exception is justified because there is a danger that wives may make false complaints against their husbands out of spite or in an attempt to obtain a better divorce settlement.[6] We doubt that this will be the result because the offense of battery which can now be exerted by one spouse against another has not been used for such purpose, at least not to the point that law enforcement has been taxed. Should this warning prove valid, the Legislature may then conclude that the definition of consent needs to be expanded.
Accepting the principle that our sexual battery statute proscribes a crime of violence and not a crime of sex, it is an indication that the people of this state no longer will tolerate a violent assault, sexual or otherwise, upon one another. Clearly, no person in this state can justifiably claim a legal right to impose his or her sexual will upon another person, including his or her spouse, over that person's unmistakable objection. See State v. Smith.
REVERSED.
DAUKSCH, C.J., and COBB, J., concur.
NOTES
[1] While Florida no longer has a distinct statute dealing with rape, the offense is now incorporated in the broader sexual battery statute, section 794.011.
[2] In State v. Aiken, 370 So.2d 1184 (Fla. 4th DCA 1979), aff'd, 390 So.2d 1186 (Fla. 1980), the court declared that:

Under the present statute sexual battery is a considerably broader crime than rape. Sexual battery is specifically defined as follows: (f) Sexual battery means oral, anal, or vaginal penetration by, or union with, the sexual organ of another or the anal or vaginal penetration of another by any other object; however, sexual battery shall not include acts done for bona fide medical purposes.
[3] See e.g., Washington v. State, 302 So.2d 401 (Fla. 1974), wherein the Florida Supreme Court held that any forcible penetration by a man's sexual organ into any body orifice of another against the latter's will constituted forcible carnal knowledge of the victim and upon conviction was punishable under section 794.01, Florida Statutes (1973).
[4] See also State v. Morrison, 85 N.J. 212, 426 A.2d 47 (1981); Commonwealth v. Chretien, ___ Mass. ___, 417 N.E.2d 1203 (1981).
[5] In Smith, the New Jersey Supreme Court questioned the binding effect of Hale's declaration:

Hale cited no authority for this proposition and we have found none in earlier writers. Thus the marital exemption rule expressly adopted by many of our sister states has its source in a bare, extra-judicial declaration made some 300 years ago. Such a declaration cannot itself be considered a definitive and binding statement of the common law, although legal commentators have often restated the rule since the time of Hale without evaluating its merits [citations omitted].
426 A.2d at 41.
[6] See Comment: Rape and Battery Between Husband and Wife, 6 Stan.L.Rev. 719, 725 (1954).