449 So.2d 903 (1984)
The STATE of Florida, Appellant,
v.
William RIDER, Appellee.
No. 83-821.
District Court of Appeal of Florida, Third District.
April 17, 1984.
Rehearing Denied May 25, 1984.
Jim Smith, Atty. Gen., Calvin L. Fox, Asst. Atty. Gen., for appellant.
William A. Meadows, Jr., South Miami, George T. Pallas, Miami, for appellee.
Before HENDRY, BASKIN and JORGENSON, JJ.
JORGENSON, Judge.
This case presents the question of whether one spouse may be prosecuted under section 794.011(3) and (5), Florida Statutes (1981), for sexual battery upon the other spouse. For the reasons which follow we find, contrary to the trial court, that a spouse may be so prosecuted. Accordingly, we reverse and remand with directions to reinstate the prosecution.

I
William Rider was charged by information with the crime of sexual battery[1] upon Marion Rider, his wife. The two-count information alleged that Mr. Rider, in committing the sexual battery, used both actual physical force likely to cause serious personal injury, in violation of section 794.011(3), Florida Statutes (1981),[2] and physical force and violence not likely to cause serious personal injury, in violation of section 794.011(5), Florida Statutes (1981).[3]
The trial court found that at the time of the alleged sexual battery Mr. and Mrs. Rider were living together as husband and wife and that no dissolution of marriage action had been begun, no temporary restraining order or judicial decree of separation *904 had been obtained and no written separation agreement existed. The trial court also found that Mrs. Rider had stated under oath that Mr. Rider had never physically abused her prior to the alleged sexual battery.
Citing 1 M. Hale, History of the Pleas of the Crown 629 (1736), as its authority, the trial court stated that "[t]here is a common law interspousal exception which precludes a husband from being prosecuted for the forceable rape of his wife" and that the sexual battery statute, § 794.011, Fla. Stat. (1981), is silent as to this "common law interspousal exception" and, therefore, does not abrogate it. The trial court determined that this "interspousal exception" to prosecution for sexual battery is applicable except in situations where "the complaining witness first [initiates] a judicial proceeding [for dissolution of marriage], [has] a separation agreement and/or physically [separates] herself from the defendant." In doing so the trial court distinguished two recent cases in which prosecution of a husband for sexual battery upon or the rape of his wife was ostensibly allowed because in each case the defendant and the alleged victim were, at the very least, living separately. See State v. Smith, 401 So.2d 1126 (Fla. 5th DCA 1981) (dissolution of marriage pending, temporary restraining order and separate residences); State v. Smith, 85 N.J. 193, 426 A.2d 38 (1981) (separate residences). Finding that these factual prerequisites were absent from the present case, the trial court dismissed the information.

II
The idea that a husband could not be prosecuted for the common-law crime of rape when the offense was allegedly perpetrated upon his wife apparently had its origin in the following statement which appeared in an English treatise published several centuries ago: "But the husband cannot be guilty of a rape committed by himself upon his lawful wife, for by their mutual matrimonial consent and contract the wife hath given up herself in this kind unto her husband which she cannot retract," 1 M. Hale, supra. See Smith, 401 So.2d at 1128.
That this single sentence, which stands alone, naked of citation to any authority judicial or otherwise, could be considered sufficient precedent to allow a husband to rape with impunity his wife baffles all sense of logic. Although subsequent cases and treatises have stated the same principle, at times with citation to Hale and at times with citation to nothing, we can find no rational authority for such a proposition. Nowhere in the line of judicial holdings which constitutes the corpus juris of the state of Florida can we find even the suggestion of such a proposition. Contrary to the trial court's conclusion, we simply cannot find any indication that a common-law "interspousal exception" to rape has ever existed in this state. We, therefore, see no need to further consider in other than a hypothetical sense what apparently exists, if at all, only as some phantom legal truism without basis in the common law of Florida.

III
We hold that even if a common-law "interspousal exception" to rape prosecution had existed, its hypothetical existence would now be immaterial because in 1974 the Florida Legislature repealed the codified common-law crime of rape and replaced it with the statutory crime of sexual battery. Further, we hold that there is no legally relevant distinction between the facts in the fifth district's Smith opinion and those in the case before us. Although the fifth district noted in Smith that the wife had withdrawn any "implied consent" to sexual battery by filing a dissolution of marriage action and procuring a restraining order, the district court went on to state that "to rest the decision on this factor alone would require an assumption that the common law exception still exists. We reject such a contention," id. at 1129 (emphasis added). We agree.

*905 A
As pointed out by the fifth district in Smith, the sexual battery statute, § 794.011, Fla. Stat. (1981), proscribes a crime of violence, not a crime of sex. See Aiken v. State, 390 So.2d 1186 (Fla. 1980); Smith, 401 So.2d at 1129. Sexual gratification is not an element of sexual battery. "`Chapter 794 of the Florida Statutes shows a clear intent to protect an individual's sexual privacy from violence,'" Aiken at 1187 (quoting State v. Aiken, 370 So.2d 1184, 1185 (Fla. 4th DCA 1979)). "[A] violation of the sexual battery statute occurs whenever ... there is an intentional, non-consensual intrusion into the sexual privacy of another," Surace v. State, 378 So.2d 895, 899 (Fla. 3d DCA), (Schwartz, J., specially concurring) (emphasis added), cert. denied mem., 389 So.2d 1115 (Fla. 1980).
The differences between the sexual battery statute and the repealed rape statute, § 794.01, Fla. Stat. (1973),[4] are more than sufficient to abrogate any "implied consent" upon which a common-law "interspousal exception" to prosecution may be based. There was but one degree of "force" required for conviction of rape. "[I]f the exhibited or threatened force was not sufficient to put the woman `in fear of loss of life or other great danger,' evidence of resistance was required to demonstrate the act was by force and against her will." Hufham v. State, 400 So.2d 133, 134 (Fla. 5th DCA 1981). Thus, under the rape statute the Florida Supreme Court held the evidence insufficient for conviction where the defendant, after the alleged victim refused to enter his tent, grabbed the alleged victim by her arm, pulled her into the tent, threw her on a bed and had sexual intercourse with her while choking her with his hand. See Bailey v. State, 76 Fla. 213, 79 So. 730 (1918).[5]
The sexual battery statute divides the crime of sexual battery into degrees. Rather than depend upon outcry or resistance *906 from the victim to determine force or lack of consent the sexual battery statute defines consent as "intelligent, knowing, and voluntary consent [which] shall not be construed to include coerced submission," § 794.011(1)(h), Fla. Stat. (1981). "`[C]onsent' is a relative term to be viewed under the circumstances of each case, but by the standards established by the new statute, rather than the old, and this, too, is essentially a question for the jury." Hufham, 400 So.2d at 135. Whatever the traditional notions concerning spousal consent to sexual intercourse may be they certainly do not contemplate consent to acts of violence such as those alleged in the information in this case.
The sexual battery statute divides "force" into various degrees and separate crimes, including the threat of force. See § 794.011(3), (4)(b), (c), (5), Fla. Stat. (1981).
The only conclusion that can be reached is that the legislature, by repealing the rape statute and enacting the sexual battery statute, intended to abrogate any common-law assumptions concerning the crime of rape.

B
In Smith, the fifth district examined and rejected the various reasons other jurisdictions have offered in attempts at rationalization of an "interspousal exception": (1) a wife is the chattel of her husband or father, (2) a wife and husband are one person and one cannot rape oneself and (3), as proposed by Hale, a woman by repeating the words "I do" consents to sexual intercourse with and therefore bestows upon her thusly-created husband the right to rape or sexually batter her. See Smith, 401 So.2d at 1128-29.[6]
All of these rationalizations of course presume the common-law crime of rape which proscribed the sexual gratification of a male by forceable non-consensual sexual intercourse with a female. Florida, however, repealed its gender-based rape statute in 1972, replaced it with a gender-neutral rape statute and in 1974 repealed the gender-neutral rape statute and replaced it with a gender-neutral sexual battery statute.[7] As the fifth district pointed out, "[i]t is inconceivable that a husband would accept the argument that by marriage he consented to the conduct defined in the statute if inflicted upon him by force or violence," see id. at 1129 (emphasis added). We agree.
Further, placing presumption upon presumption, were we to assume that a common-law "implied consent interspousal exception" once existed and still exists under the gender-neutral sexual battery statute, it does not follow, as the fifth district pointed out, that such consent can never be withdrawn so long as the marriage technically exists. See id. Although in Smith the fifth district dealt with parties who had begun dissolution of marriage proceedings and were restrained to limited contact by a court order, the district court rejected the contention that the presence of those facts would be necessary for an interspousal sexual battery prosecution. See id. As stated by the New Jersey Supreme Court
If a wife can exercise a legal right to separate from her husband and eventually terminate the marriage "contract," may she not also revoke a "term" of that contract, namely, consent to intercourse? ... [A husband] has no right to force sexual relations upon [his wife] against her will. If her repeated refusals are a "breach" of the marriage "contract," his remedy is in a matrimonial court, not in violent or forceful self-help.
*907 Smith, 85 N.J. at 205-06, 426 A.2d at 44. We agree.

IV
As we have stated, there is no authority for the proposition that a common-law "interspousal exception" to rape prosecution ever existed in Florida. "[R]ules of old English common law, if contrary to Florida customs, institutions, or intendments of constitutional and statutory provisions, are not part of the Florida common law." Gates v. Foley, 247 So.2d 40, 43-44 (Fla. 1971) (citing Waller v. First Savings & Trust Co., 103 Fla. 1025, 138 So. 780 (1931)). We agree with the New Jersey Supreme Court in rejecting Hale's justification for the interspousal exception that upon entering marriage a wife irrevocably consents to sexual intercourse with her husband. We also agree that
the existence of the [interspousal exception under English common law] is not as obvious as the lower [court] here or courts in other jurisdictions have believed. The rule may simply not have been applicable to revocable marriages, which exist today as a result of changes in divorce laws. The fact that many jurisdictions have mechanically applied the rule, without evaluating its merits under changed conditions does not mean that such blind application was part of the "principles of the common law" adopted in this State.
Smith, 85 N.J. at 202-03, 426 A.2d at 43.
Justice Terrell, in State v. Herndon, 158 Fla. 115, 27 So.2d 833 (1946), in abrogating the common law rule that marriage vested the ownership of a wife's property in her husband, said that a court must interpret the law in light of changing concepts, reason and good conscience and "can no longer interpret the law from the back of an ass; the process is so slow that it overlooks factors that require a different interpretation today from what might have been required yesterday," id. at 117-18, 27 So.2d at 835 (emphasis added).[8]
We cannot today in good conscience recognize a common-law "interspousal exception" to prosecution for violation of section 794.011(3) and (5), Florida Statutes (1981).
[W]hen grave doubt exists of a true common law doctrine ... we may, as was written in Ripley v. Ewell, [61 So.2d 420 (Fla. 1952)], exercise a "broad discretion," taking "into account the changes in our social and economic customs and present day conceptions of right and justice." It is, to repeat, only when the common law is plain that we must observe it.
Duval v. Thomas, 114 So.2d 791, 795 (Fla. 1959).
Given a common-law notion of dubious validity and the legislative abolition of the codified common-law crime to which the notion supposedly attaches, we cannot and will not adopt a common-law presumption of consent to an act of violence.
Reversed and remanded with directions to reinstate the prosecution.
NOTES
[1] Section 794.011(1)(f), Florida Statutes (1981), provides that "`[s]exual battery' means oral, anal, or vaginal penetration by, or union with, the sexual organ of another or the anal or vaginal penetration of another by any other object; however, sexual battery shall not include acts done for bona fide medical purposes."
[2] Section 794.011(3), Florida Statutes (1981), provides that

[a] person who commits sexual battery upon a person over the age of 11 years, without that person's consent, and in the process thereof uses or threatens to use a deadly weapon or uses actual physical force likely to cause serious personal injury shall be guilty of a life felony, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
[3] Section 794.011(5), Florida Statutes (1981), provides that

[a] person who commits sexual battery upon a person over the age of 11 years, without that person's consent, and in the process thereof uses physical force and violence not likely to cause serious personal injury shall be guilty of a felony of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
[4] Section 794.01, Florida Statutes (1973), which was repealed by an Act of Oct. 1, 1974, ch. 74-121, § 1, 1974 Fla.Laws 371, 372, provided:

(1) Whoever of the age of seventeen years or older unlawfully ravishes or carnally knows a child under the age of eleven is guilty of a capital felony, punishable as provided in § 775.082.
(2) Whoever ravishes or carnally knows a person of the age of eleven years or more, by force and against his or her will, or unlawfully and carnally knows and abuses a child under the age of eleven years, shall be guilty of a life felony, punishable as provided in § 775.082.
(3) It shall not be necessary to prove the actual emission of seed, but the crime shall be deemed complete upon proof of penetration only.
Although the rape statute was not previously gender-neutral, see § 794.01, Fla. Stat. (1971), wherein it is provided that
[w]hoever ravishes and carnally knows a female of the age of ten years or more, by force and against her will, or unlawfully or carnally knows and abuses a female child under the age of ten years, shall be guilty of a capital felony, punishable as provided in § 775.082. It shall not be necessary to prove the actual emission of seed, but the crime shall be deemed complete upon proof of penetration only,
it was made so by an Act of Dec. 8, 1972, ch. 72-724, § 7, 1973 Fla.Laws 15, 20. It was, of course, repealed altogether less than a year later.
The repealed rape statute contained language virtually identical to the language found in the 1868 codification of common-law rape. See Act of Aug. 6, 1868, ch. 1637, sub-ch. 3, § 40, 1868 Fla.Laws 61, 68, wherein it is provided that
[w]hoever ravishes and carnally knows a female of the age of ten years or more, by force and against her will, or unlawfully and carnally knows and abuses a female child under the age of ten years, shall be punished by death or by imprisonment in the State penitentiary for life.
Common-law rape was first recognized by the supreme court in Cato, a slave, v. State, 9 Fla. 163 (1860).
[5] See also Hollis v. State, 27 Fla. 387, 9 So. 67 (1881) (evidence insufficient to support guilty verdict where the defendant seized a fourteen-year-old victim around the waist, covered her mouth with one hand and threw her down, removed his hand from her mouth, pressed his arm against her throat, told her that if she cried out he would kill her, then lifted her dress and had sexual intercourse); O'Bryan v. State, 324 So.2d 713 (Fla. 1st DCA) (evidence insufficient to sustain the defendant's conviction where the defendant forced himself into the victim's home, pushed her to the floor, held her with one hand, removed her slacks and panties with the other hand, pinned her legs down with his legs and had sexual intercourse), cert. denied mem., 336 So.2d 1184 (Fla. 1976).
[6] The marital privacy right recognized by the United States Supreme Court in Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), may not be used as a justification for immunity from prosecution for sexual battery. The freedom of married persons to make choices in their own home does not include the freedom to batter one's spouse. To recognize such a freedom would harm the very values the Court in Griswold sought to protect. See Hilf, Marital Privacy and Spousal Rape, 16 New Eng.L.Rev. 31, 35-40 (1980); Case Note, 10 Fla.St.U.L.Rev. 326, 332-33 (1982).
[7] See note 4, supra.
[8] And it is not a novel proposition in Florida for one spouse to be prosecuted for crimes committed upon the other spouse. See, e.g., Herndon (husband may be prosecuted for larceny of his wife's property); Dunn v. State, 397 So.2d 748 (Fla. 2d DCA) (husband prosecuted for attempted first degree murder of his wife), review denied mem., 407 So.2d 1103 (Fla. 1981); Vasquez v. State, 350 So.2d 1094 (Fla. 3d DCA 1977) (husband prosecuted for battery upon his wife), cert. denied mem., 360 So.2d 1250 (Fla. 1978); Grantz v. State, 268 So.2d 572 (Fla. 4th DCA 1972) (wife prosecuted for larceny of her husband's property). See generally 41 C.J.S., Husband & Wife § 164 (1944) (at common law husband and wife may be prosecuted for assault and battery upon one another). Because spousal prosecution for assault and battery is proper and because assault and battery are lesser included offenses of sexual battery, see Brice v. State, 348 So.2d 636 (Fla. 2d DCA 1977), it logically follows that a spouse may be prosecuted for the greater offense of sexual battery.